BONSALL v AMERICAN MOTORISTS INSURANCE COMPANY

Docket No. 53114. Submitted May 12, 1981, at Marquette.—Decided
    September 22, 1981. Leave to appeal applied for.

      Amos L. Bonsall, Jr., was killed in an automobile accident in
    Wisconsin during the course of his employment. A Wisconsin
    resident insured by Sentry Insurance Company was driving the
    other vehicle involved in the accident. American Motorists
    Insurance Company was the no-fault insurer of the vehicle
    being operated by Bonsall. Bonsall's estate made a claim
    against the Wisconsin driver and his insurer, Sentry. The
    estate and Sentry entered into an agreement whereby, for the
    sum of $110,000, Sentry and its insured would be released from
    all liability. Included in the agreement was a statement that
    the payment of the $110,000 was not to reimburse or compen-
    sate the estate, Bonsall's heirs, or his wife individually for
    losses covered by the Michigan no-fault automobile insurance
    act. Dorothy L. Bonsall, individually, and as the administratrix
    of the estate of Amos L. Bonsall, Jr., and Stephen M. Bonsall,
    Daniel G. Bonsall and Lynn Bonsall then brought suit in
    Dickinson Circuit Court seeking personal protection insurance
    benefits from American Motorists Insurance Company. Ameri-
    can filed a counter-complaint and third-party complaint against
    Sentry seeking reimbursement or a setoff in the amount of the
    settlement money. Both American and Sentry moved for sum-
    mary judgment. Sentry's motion was granted, V. Robert Pay-
    ant, J. American appeals. *Held:*

      No subtraction or reimbursement of no-fault benefits is due a
    no-fault insurer where an insured and a third-party tortfeasor
    enter into an agreement whereby the insured receives compen-
    sation for noneconomic losses suffered in an automobile acci-
    dent. Accepting that the settlement agreement between the
    estate and Sentry was written in good faith, American is
    precluded from obtaining reimbursement or subtraction based
    on the no-fault act. Since there is no right to reimbursement or

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7A Am Jur 2d, Automobile Insurance § 443.
    No fault: right of insurer to reimbursement out of recovery against
    tortfeasor. 69 ALR3d 830. ·

subtraction, American had no right to participate in the agreement. The settlement is neither excessive nor suggestive of collusion and bad faith. Summary judgment was properly granted.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — NONECONOMIC LOSS — REIMBURSEMENT — STATUTES.

A no-fault automobile insurer has no right under the no-fault act to reimbursement or subtraction of no-fault benefits due an insured where the insured and a third-party tortfeasor enter into an agreement whereby the insured is compensated for noneconomic loss not covered by the no-fault act (MCL 500.3116[4], 500.3135; MSA 24.13116[4], 24.13135).

2. INSURANCE — NO-FAULT INSURANCE — REIMBURSEMENT — INDEMNITY — STATUTES.

A no-fault insurer who has a right of reimbursement under the no-fault act has a right to seek indemnity from one who, with notice of the insurer's interests, makes payment to the insured without making the insured and the insurer joint payees (MCL 500.3116[3]; MSA 24.13116[3]).

*McNeil, Mouw & Torreano,* for plaintiffs Bonsall.

*Smith, Haughey, Rice & Roegge* (by *Craig R. Noland),* for defendant American Motorists Insurance Company.

*Kendricks, Bordeau, Casselman, Adamini, Keefe & Smith,* for Sentry Insurance Company.

Before: D. E. HOLBROOK, JR., P.J., and M. F. CAVANAGH and BEASLEY, JJ.

M. F. CAVANAGH, J. Plaintiffs entered into a settlement agreement with third-party defendant Sentry Insurance Company (Sentry) after plaintiffs' decedent, Amos Bonsall, was killed in an automobile accident in Wisconsin during the course of his employment. Sentry was the insurer of the third-party tortfeasor (a Wisconsin resident).

Defendant American Motorists Insurance Company (American), insurer of the decedent's employer's vehicle, claimed it was entitled to reimbursement or setoff of the settlement money and filed a counter-complaint against plaintiffs and a third-party complaint against Sentry. Both American and Sentry moved for summary judgment, GCR 1963, 117.2(1). Sentry's motion was granted. American appeals as of right.

The settlement agreement in the instant case was entered into by plaintiffs and Sentry without the participation of American. American claims that it is entitled to reimbursement or setoff of the settlement money because the settlement operates to unjustly enrich Sentry and serves as a double recovery for plaintiffs.

MCL 500.3116; MSA 24.13116 provides:

"(1) A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury.

"(2) A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101(3) and (4) was not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, and shall be made only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive personal protection insurance benefits. A subtraction shall be made only to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the

claimant shall repay to the insurers out of the recovery a sum equal to the benefits received, but not more than the recovery exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. The insurer shall have a lien on the recovery to this extent. A recovery by an injured person or his or her estate for loss suffered by the person shall not be subtracted in calculating benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person.

"(3) A personal protection insurer with a right of reimbursement under subsection (1), if suffering loss from inability to collect reimbursement out of a payment received by a claimant upon a tort claim is entitled to indemnity from a person who, with notice of the insurer's interest, made the payment to the claimant without making the claimant and the insurer joint payees as their interests may appear or without obtaining the insurer's consent to a different method of payment.

"(4) A subtraction or reimbursement shall not be due the claimant's insurer from that portion of any recovery to the extent that recovery is realized for noneconomic loss as provided in section 3135(1) and (2)(b) or for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the amount recovered by the claimant from his or her insurer."

However, in *Workman v Detroit Automobile Inter-Ins Exchange,* 404 Mich 477; 274 NW2d 373 (1979), this section was interpreted in relation to MCL 500.3135; MSA 24.13135. Section 3135 provided that an insured's third-party recovery was limited to noneconomic losses. The Supreme Court read these two sections together and stated that § 3116 meant that an insurer is entitled to reimbursement "for losses for which personal injury protection benefits were paid". *Id.,* 510.

After this decision, § 3116 was amended to limit

the right of reimbursement to benefits for which personal protection benefits were received, or otherwise "would be entitled to receive". This language seems to designate those situations where a plaintiff has received a tort claim judgment and it has either been satisfied or is due him. It does not appear that that language can be interpreted as a mandate to a plaintiff to pursue a tort claim, as is contended by defendant here.

The Court in *Workman* stated that the purpose of § 3116 was to prevent double recovery of economic loss. *Workman, supra,* 510.

Applying § 3116 to the facts in the instant case, it appears that American would have a right to reimbursement from plaintiffs for a tort claim arising from an accident occurring outside this state if the recovery realized by plaintiffs includes compensation for damages covered by personal protection benefits already received by plaintiffs or for benefits to which they are otherwise entitled. Under (3) of § 3116 an insurer who has the right of reimbursement under subsection (1) has a right to seek indemnity from a person, in this case third-party defendant, who, with notice of the insurer's interests, made the payment to a plaintiff without making the plaintiff and the insurer joint payees. Thus, the prerequisites to the invocation of (3) are that the insurer first have a right of reimbursement against plaintiff, and that third-party defendant had notice of defendant's interest. Third-party defendant in this case denied that it had such notice, and plaintiffs deny that defendant had a right of reimbursement against them.

MCL 500.3116; MSA 24.13116, subsection (4), reiterates that no subtraction or reimbursement is due defendant from that portion of a recovery to the extent that the recovery is realized for noneconomic loss.

Defendant in the instant case claims that plaintiffs' settlement must be subtracted from the no-fault benefits payable just as damages recovered in tort claims are subtracted from workers' compensation benefits. Defendant cites *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975). In *Pelkey,* the plaintiff entered into a settlement agreement with an alleged third-party tortfeasor. The settlement of $10,000 was allocated as follows: $3,000 to the plaintiff's husband for loss of consortium, $3,364.60 to the workers' compensation carrier as reimbursement, and $3,635.40 to the plaintiff for pain and suffering.

After settlement, the plaintiff in *Pelkey* was treated again and petitioned for additional workers' compensation. She was awarded this compensation but was required to reimburse the carrier out of the amounts received in the settlement for pain and suffering. The Court determined that recoveries for pain and suffering were intended to be economic loss; therefore, all the damages recoverable in tort included compensation for all losses required to be compensated for by the workers' compensation carrier. This decision precluded a double recovery by the plaintiff.

In the instant case, the settlement agreement specifically states that the settlement was neither compensation or reimbursement for losses compensable or payable under no-fault nor related to any reimbursement for medical out-of-pocket expenses or economic loss suffered during the first three years after the accident. In short, the agreement very specifically states that the monies received are for injuries not compensable under the Michigan no-fault act. Accepting that the settlement agreement was written in good faith, defendant is precluded from obtaining reimbursement or sub-

traction based on § 3116. Furthermore, if there were no rights to reimbursement or subtraction, then there was no right to participate in the agreement made between plaintiffs and third-party defendant. Even accepting as true defendant's allegation that under the circumstances the settlement agreement manifests collusion, there still appears to be no cause of action under § 3116. Summary judgment, then, was properly granted.

This result is further supported by *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980), and *Great American Ins Co v Queen,* 410 Mich 73; 300 NW2d 895 (1980). In *Mathis,* the Court dealt with the question of whether the no-fault act required a setoff of workers' compensation benefits received by an insured. The Court ruled that workers' compensation benefits must be deducted from no-fault benefits received since "[t]he workers' compensation benefits are paid as a result of the same accident and duplicate in varying degrees the no-fault benefits otherwise due". *Mathis,* 187. No double recovery was allowed.

In *Great American, supra,* Great American paid the defendant workers' compensation benefits for injuries he suffered while driving an automobile in the course of his employment. Queen had settled a claim against the third-party tortfeasors for noneconomic losses. This claim of $18,500 was paid by the tortfeasors' no-fault insurers without notice to the workers' compensation insurer. Great American brought an action against the tortfeasors and Queen for reimbursement of workers' compensation benefits from the settlement on the theory that it was entitled to subrogation under the Worker's Disability Compensation Act. Summary judgment was granted in favor of the defendants.

Both the Court of Appeals and the Supreme Court affirmed, holding that the workers' compensation benefits were for Queen's economic loss and the no-fault benefits for his noneconomic loss, so that there was no double recovery. The Court's holding emphasized that no-fault insurance compensates purely economic elements of damage. The Court went on to say:

"The no-fault insurer's right to reimbursement out of tort recoveries from third parties is governed by § 3116 of the no-fault act and this Court's decision in *Workman*. The right to reimbursement extends only to those atypical cases where tort recovery is permitted for elements of damage compensated by no-fault benefits; there is no right to reimbursement unless there is duplicate recovery." (Footnotes omitted.) *Great American, supra,* 93-94.

The facts in *Great American Ins Co* are very similar to those in the instant case. However, Great American brought an action for reimbursement of workers' compensation benefits from a settlement and defendant in the instant case brought an action for reimbursement of no-fault benefits from plaintiff's tort settlement.

Finally, defendant contends that if plaintiffs had sued under Wisconsin's wrongful death act and had received an award, only $10,000 of that award could be deemed noneconomic loss. Thus, since plaintiffs received a settlement of $110,000, at least $100,000 of that must be for economic loss and, consequently, subject to subtraction from the no-fault benefits. This argument is without merit. First, plaintiffs did not bring suit in Wisconsin; they are suing defendant in Michigan for no-fault benefits. Since there was no suit in Wisconsin and no judgment rendered, Wisconsin's wrongful death

act does not apply to the settlement. Also, as stated by the trial judge in his opinion, plaintiffs had no obligation to sue third-party defendant under the Michigan no-fault act. Also, in addition to the extrapolation required by defendant's argument, one must infer that the term "pecuniary injury" used in the Wisconsin statute is synonymous with "economic" loss as used by the Michigan statute. Defendant has cited no case law to support this argument.

Defendant's proposition that the settlement agreement was collusive because it was entered into without consulting defendant and because it specifically excluded those items covered by the personal injury protection furnished by defendant is without substantiation. These facts, standing alone, do not invoke the provisions of § 3116(1) or (2).

In the instant case, it appears that the settlement agreement could very well have been made in good faith. Since plaintiffs' decedent was only 51 years of age, it is likely that he would have had many years of lucrative employment ahead of him. Section 3135(2)(c) of the no-fault act allows recovery of damages for economic loss beyond three years and for loss in excess of the daily and monthly limitations. Since plaintiffs' decedent would have been only 54 years of age three years after the accident, and since he earned approximately $21,000 a year at the time of his death, the settlement properly included compensation for these economic losses not covered by the no-fault act. Viewed in this light, the settlement is neither excessive nor suggestive of collusion and bad faith. The trial court's grant of summary judgment is affirmed.

Affirmed. Costs to third-party defendant Sentry.