No. 55,177

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellee*, v.
PEGGY KROEKER, *Appellant.*

(676 P.2d 66)

Opinion filed January 13, 1984.

*Gerald W. Scott,* of Matlack, Foote, Scott, Joseph & Wilkinson, P.A., of Wichita, argued the cause and was on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued

the cause, and *Stephen M. Kerwick,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action for a declaratory judgment brought by the plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), against its insured, the defendant, Peggy Kroeker, to determine State Farm's right to subrogation or reimbursement for personal injury protection (PIP) benefits previously paid to the defendant under its automobile insurance policy for funeral and survivors' benefits.

The pertinent facts in the case are not greatly in dispute and essentially are as follows: On April 1, 1978, defendant's husband, Glen E. Kroeker, was involved in an automobile accident with Lonita V. Skaggs. Both drivers died as a result of this collision and both were insured by State Farm. Mr. Kroeker was insured under several automobile insurance policies issued by State Farm, each of which contained statutory mandated PIP or no-fault coverage. On April 21, 1978, State Farm paid defendant the sum of $1,000 in PIP funeral benefits. Mrs. Skaggs, the tortfeasor in this action, had a $50,000 liability policy with State Farm. In its evaluation of the accident between its two insurers, State Farm concluded that Mrs. Skaggs was wholly at fault and that the value of defendant's claim against the Skaggs's estate was at least equal to the $50,000 liability limit of her policy. On June 8, 1978, State Farm offered defendant the sum of $49,000 in settlement of her claim against Mrs. Skaggs. This amount represented the Skaggs's policy limits of $50,000 less the $1,000 PIP funeral benefits which were previously paid and to which State Farm was asserting its subrogation rights. Defendant rejected this offer. Over the next seven months, State Farm paid defendant additional PIP survivor benefits totaling $4,550.

On August 8, 1978, Peggy Kroeker filed suit in Barber County against the estate of Lonita V. Skaggs to recover damages resulting from the wrongful death of Glen E. Kroeker. On October 26, 1978, Peggy Kroeker, the Skaggs estate, and State Farm entered into a partial settlement of plaintiff's claim which was reflected in an order filed in the wrongful death action in Barber County District Court. Stipulations of the parties were submitted to the district court and approved. The agreed order of the court set forth the stipulations as follows:

"FIRST: State Farm Automobile Insurance Company is the liability insurance

carrier on the vehicle driven by Lonita V. Skaggs. It was that vehicle that collided with Glen E. Kroeker, causing his wrongful death.

"SECOND: The total liability insurance available on the State Farm insurance policy is $50,000.

"THIRD: State Farm Automobile Insurance Company has previously paid to Mrs. Kroeker the surviving widow and heir of Glen E. Kroeker, the sum of $5,550.00. $1,000 of this sum was under the funeral benefit and the balance under PIP. State Farm claims that it is entitled to recover the sums that it has previously paid to the said Peggy Kroeker out of the $50,000 liability coverage.

"FOURTH: The said $50,000 is not ample compensation to the heirs of the decedent Glen E. Kroeker for his wrongful death under 60-1904.

"FIFTH: Lonita V. Skaggs was negligent and her negligence was one of the direct causes of the death of Glen E. Kroeker.

"SIXTH: Counsel representing the Estate of Lonita V. Skaggs and counsel representing State Farm Automobile Insurance Company are agreeable, providing it meets the Court's approval, to pay to the Clerk of the District Court of Barber County, Kansas in this case, the policy limits; i.e., the sum of $50,000. Said counselors further agree that at a later time the Court may hear and determine the amount of damage the heirs of the Estate of Glen E. Kroeker should receive under K.S.A. 60-1904, and any such award wherein it exceeds the sum of $50,000 shall be listed under the Fourth class of claims against the Lonita V. Skaggs Estate and thus paid in proportion to the other said Fourth class claims.

"SEVENTH: It is agreed between counsel, out of the $50,000 being paid into Court on the Judgment entered herein, that the said $5,550.00 claimed by State Farm under its right of subrogation and/or lien or reimbursement right for PIP payments paid or payable to the Kroeker family, shall be disbursed back to State Farm and that the rights of the parties in and to such sum or similar sums shall be determined by a separate declaratory judgment action to be filed and determined in the District Court of Sedgwick County, Kansas. In the event it is determined that the money is rightfully the property of the heirs of Glen E. Kroeker, such sum shall be paid to the widow Peggy Kroeker with interest thereon at the rate of 8% per annum from the date of this Journal Entry.

"EIGHTH: It is further agreed that the payment of the $50,000 and the disbursement thereof by the Court to the heirs of the deceased Glen E. Kroeker shall not operate as a release or in any way extinguish any right that the heirs of Glen E. Kroeker may have for his wrongful death against any other party whatever.

"NINTH: It is further agreed that the Judge of this Court will by subsequent order, determine the apportionment of the proceeds paid to this Court, pursuant to this agreement.

"WHEREUPON the Court, after being advised of the above, finds first that the agreements entered into between the parties are acceptable to this Court and reasonable, and thus should by this Court be entered into an order.

"IT IS THEREFORE BY THIS COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that this Court finds Lonita V. Skaggs, deceased, was negligent and that her negligence was one of the direct causes of the wrongful death of Glen E. Kroeker. That the heirs of Glen E. Kroeker have

suffered a loss by reason of his death that exceeds the sum of $50,000, the amount to be determined by this Court or some other Court at a later hearing.

"IT IS FURTHER ORDERED by this Court that the statements and agreements stated into the record by counsel are a part of this Order as if set out herein in full. As a result thereof, this Court finds that the State Farm Automobile Insurance Company has met its obligation to pay the amount of its liability coverage towards any judgment that may be rendered on behalf of the heirs of Glen E. Kroeker, deceased, for his wrongful death upon its payment to the Clerk of the District Court of Barber County, Kansas the sum of $50,000. The Court further finds that this Journal Entry is to be considered in the nature of a Covenant Not to Sue and it expressly reserves the rights of the heirs of Glen E. Kroeker, deceased, to proceed against any other person or party for the damages sustained by the wrongful death of Glen E. Kroeker."

On April 30, 1979, State Farm filed its petition for declaratory judgment in Sedgwick County against Peggy Kroeker, asserting that it was entitled to receive, through subrogation rights, the sum of $1,000 which had been paid to Mrs. Kroeker for funeral benefits and $4,550 paid in survivor benefits. Thereafter, on June 26, 1979, an order was entered in the Barber County case approving a pretrial settlement between Peggy Kroeker and the administrator of the estate of Lonita V. Skaggs, deceased, reserving the right of the plaintiff to sue other negligent parties. State Farm's attorneys did not appear in this proceeding, nor did they approve the journal entry of judgment. The pertinent provisions of the order approving partial settlement are as follows:

"1. For the purpose of settlement, it is agreed by and between the parties that the decedent Lonita V. Skaggs was negligent in the operation of her motor vehicle, which negligence was the proximate cause of the accident herein which resulted in her death and the death of Glen E. Kroeker, and the decedent Glen E. Kroeker was free from negligence.

"2. The parties have arrived at a compromise settlement concerning the amount of damages sustained by the plaintiff herein as follows:
Glen E. Kroeker's wages for his Fire Department income only, disregarding his separate income from his lawn-care service:

| | |
|---|---|
| $559.84/2 wks. x 26 x 40 years = | $582,233.60 |
| Damages for mental anguish, suffering and bereavement; loss of society, companionship, comfort and protection; loss of marital care, attention, advice and counsel; loss of consortium; loss of filial care and attention; loss of parental counsel: | 25,000.00 |
| Total Stipulated Damages: | $607,233.60 |

"3. State Farm Mutual Automobile Insurance Company has previously paid its policy limits of $50,000.00, as set out in the Order Approving Partial Settlement dated October 26, 1978, which reduces the claim to be entered as a fourth class claim in the Estate of Lonita V. Skaggs to $557,233.60. *No claim is presented*

*herein which is duplicative of Personal Injury Protection Benefits received by plaintiff.*

"4. It is further agreed that the approval of the amount of damages of $557,233.60 shall not operate as a release or in any way extinguish any right that the heirs of Glen E. Kroeker may have for his wrongful death against any other party whatsoever.

"5. It is further agreed that the agreement to compromise the amount of damages herein shall not be binding against the parties in any other action taken by the heirs of Glen E. Kroeker or binding upon any other party to any action taken by the heirs of Glen E. Kroeker.

"WHEREUPON, the Court, after being advised of the above, finds first that the agreements entered into between the parties are acceptable to this Court and reasonable, and thus should by this Court be entered into an order.

"IT IS, THEREFORE, BY THIS COURT CONSIDERED, ORDERED, AD-JUDGED AND DECREED that this Court finds that Lonita V. Skaggs, deceased, was negligent and that her negligence was one of the direct causes of the wrongful death of Glen E. Kroeker; that the heirs of Glen E. Kroeker have suffered a loss by reason of his death in the amount of $607,233.60, of which $50,000.00 has been paid, leaving an unsatisfied amount of damages in the amount of $557,233.60 which should be transferred to the case, In the Matter of the Estate of Lonita V. Skaggs, Deceased, Case No. 78-P-19, in the Nineteenth Judicial District, Barber County, Kansas, Probate Department, as a fourth class claim.

"IT IS FURTHER BY THE COURT ORDERED that this Order is to be considered in the nature of a covenant not to sue and that it expressly reserves the rights of the heirs of Glen E. Kroeker, deceased, to proceed against any other person or party for the damages sustained by the wrongful death of Glen E. Kroeker." (Emphasis supplied.)

On April 17, 1980, Peggy Kroeker received payment from the Clerk of the District Court of Barber County, as the distribution of the assets of Lonita V. Skaggs estate which were to apply toward her fourth class claim in the estate. This distribution depleted the assets of the estate.

In April of 1982, a pretrial conference was held in the declaratory judgment action filed in Sedgwick County. In the pretrial conference order, plaintiff State Farm's contentions and theories of recovery were essentially as follows: State Farm made a $50,000 liability settlement with Mrs. Kroeker as a result of her claim made against another State Farm insured, the estate of Lonita V. Skaggs. In making this settlement, State Farm took the position that it was entitled to be subrogated to an amount of $5,550, which represented PIP benefits which had previously been paid Mrs. Kroeker under the Kroeker's policy with State Farm.

In the pretrial order defendant's position is stated essentially

as follows: Peggy Kroeker denied State Farm's claim of subrogation or subtraction rights. She denied the liability payment of $50,000 was *duplicative* of PIP benefits paid. She claimed that the payment of $50,000 by State Farm was nothing other than a tender of State Farm's liability limits which admittedly was due the heirs of Glen E. Kroeker and which applied as a credit against the ultimate judgment entered against the Lonita V. Skaggs estate in the Barber County District Court in the amount of $607,233.60, from which a $50,000 deduction was made, leaving unsatisfied damages on Peggy Kroeker's claim in the amount of $557,233.60, which was allowed as a claim against the estate of Lonita V. Skaggs. The defendant also raised other issues, in which she asserted that the insurance policy attachment which provided for State Farm's reimbursement for PIP benefits paid was not an enforceable provision of the insurance contract because of defects in its execution. The trial court ruled as a matter of law that defendant Kroeker could not present evidence to show that the $50,000 liability payment made by State Farm was not a final settlement and was not duplicative of PIP benefits made by plaintiff State Farm.

Thereafter, on August 30, 1982, certain issues were tried to a jury which brought in a special verdict finding that Mr. and Mrs. Glen E. Kroeker had actually received the endorsement to their insurance policy which provided for subrogation rights to State Farm for PIP benefits paid. The district court then accepted the jury verdict and entered judgment in favor of State Farm, holding that State Farm's deduction of PIP funeral and survivor benefits of $5,550 from the liability settlement made with State Farm on October 26, 1978, was proper.

From this judgment, defendant Peggy Kroeker filed her appeal, claiming the district court erred in ruling as a matter of law that the defendant, as the insured, could not present evidence to show that the $50,000 liability payment made by State Farm, as Skaggs's liability carrier, was not a final settlement and was not duplicative of PIP payments made by State Farm. Defendant also contends that the trial court erred in holding that the insurance policy endorsement, which provided for State Farm's reimbursement for PIP benefits paid, was an effective, enforceable provision of the insurance contract at the time the fatal accident occurred.

The primary question presented on this appeal is whether plaintiff-appellee State Farm, as insurer of the Kroeker's vehicle, is entitled to reimbursement for the full amount of PIP benefits previously paid to defendant Peggy Kroeker. A determination of this issue requires another look at the provisions of K.S.A. 40-3113a which provides as follows:

"40-3113a. **Remedy against a tortfeasor, insurer or self-insurer subrogated, when; credits against future payments; limitation of actions; attorney fees.** (a) When the injury for which personal injury protection benefits are payable under this act are caused under circumstances creating a legal liability against a tortfeasor pursuant to K.S.A. 40-3117, the injured person, his or her dependents or personal representatives shall have the right to pursue his, her or their remedy by proper action in a court of competent jurisdiction against such tortfeasor.

"(b) *In the event of recovery from such tortfeasor by the injured person, his or her dependents or personal representatives by judgment, settlement or otherwise, the insurer or self-insurer shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefor* against such recovery and the insurer or self-insurer may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise shall be recovered by the injured person, his or her dependents or personal representatives prior to the completion of personal injury protection benefits, the amount of such judgment, settlement or recovery which is in excess of the amount of personal injury protection benefits paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of said personal injury protection benefits.

"(c) In the event an injured person, his or her dependents or personal representative fails to commence an action against such tortfeasor within eighteen (18) months after the date of the accident resulting in the injury, such failure shall operate as an assignment to the insurer or self-insurer of any cause of action in tort which the injured person, the dependents of such person or personal representatives of such person may have against such tortfeasor for the purpose and to the extent of recovery of damages which are *duplicative* of personal injury protection benefits. Such insurer or self-insurer may enforce same in his or her own name or in the name of the injured person, representative or dependents of the injured person for their benefit as their interest may appear by proper action in any court of competent jurisdiction.

"(d) In the event of a recovery pursuant to K.S.A. 60-258a, the insurer or self-insurer's right of subrogation shall be reduced by the percentage of negligence attributable to the injured person.

"(e) Pursuant to this section, the court shall fix attorney fees which shall be paid proportionately by the insurer or self-insurer and the injured person, his or her dependents or personal representatives in the amounts determined by the court." (Emphasis supplied.)

The question as to a PIP carrier's right to reimbursement was presented to this court in *Easom v. Farmers Insurance Co.*, 221

Kan. 415, 560 P.2d 117 (1977). In that case, Easom sustained personal injuries in an automobile accident between her automobile and one driven by Hill. Hill was employed by Harris. The defendant, Farmers Insurance Company, promptly paid Easom $4,731.31 in PIP benefits. Subsequently, Easom filed an action against Hill and Harris claiming $20,000 in damages for injuries sustained. They denied liability and also challenged the extent of plaintiff's injuries. While the case was pending and before the trial, plaintiff settled with Hill and Harris for $9,500, and judgment was entered in that amount on November 3, 1975. On the next day, Farmers Insurance Company, as PIP carrier, filed its petition to intervene in the action, claiming a lien and requesting reimbursement of PIP benefits paid to the plaintiff, Easom. The trial court permitted Farmers to intervene and ruled that Farmers was entitled to total reimbursement of PIP benefits paid in the amount of $4,731.31. Easom appealed. In the opinion starting on page 420, the court considered the language in K.S.A. 1975 Supp. 40-3113(*a*). It noted the language in the statute to the effect that the insurer was entitled to recover personal injury protection benefits which are *"duplicative* of personal injury protection benefits received." The primary issue presented was what portion of the settlement was duplicative. The court in *Easom* concluded that the reimbursement section of the statute was designed to prevent a *double recovery* by the insured where the net recovery by the insured was sufficient. In Syllabus ¶ 4 it is stated:

"The reimbursement of a PIP insurer for PIP benefits 'received' or 'payable' under K.S.A. 1975 Supp. 40-3113(*a*) is limited to those damages recovered by an injured insured which are duplicative of damages included in such PIP benefits."

The court rejected the theory of equitable apportionment of PIP benefits, a position adopted by the Florida courts. *Easom* is important in the determination of the present case because it establishes the following basic principles of law to be applied when a PIP carrier claims the right to reimbursement out of the insured's recovery against a tortfeasor:

■ The right of a PIP insurer to be reimbursed for PIP benefits paid is limited to those damages recovered by the injured insured which are duplicative of the PIP benefits;

■ Damages recovered are duplicative when the failure to

reimburse the PIP carrier would result in a double recovery by the insured; and

■ In determining the right of an insurer to reimbursement for PIP benefits paid under K.S.A. 40-3113a, the PIP benefits are *presumed* to be included in any recovery effected by an injured insured, either by way of settlement or judgment, in the absence of proof to the contrary, and the burden of supplying such proof is upon the insured.

The issue as to a PIP insurer's right of reimbursement was again presented to the court in *Russell v. Mackey*, 225 Kan. 588, 592 P.2d 902 (1979). *Russell* involved a dispute between an insured and her PIP carrier over the subrogation rights of the insurance company for PIP benefits paid, where the insured recovered damages for her personal injuries by a settlement and judgment against the third-party tortfeasor which released the tortfeasor from any further liability. Plaintiff Russell was injured in an automobile accident and was paid $2,552 in PIP benefits by Hartford Insurance Company. Russell filed an action against the tortfeasor, Mackey, to recover damages for personal injuries sustained in the automobile accident. Russell and Mackey settled Russell's total claim and, by agreement, a judgment was entered in favor of plaintiff Russell and against Mackey, in the amount of $15,000, which was paid into court. At this time, a dispute arose between plaintiff Russell and her insurance carrier, Hartford, over reimbursement for the PIP benefits paid to Russell. Russell filed a motion for distribution of the funds. At the same time, Hartford filed a motion for reimbursement of PIP benefits. At the hearing held on the two motions, Russell offered to prove that the personal injury action against the defendant Mackey involved a case of clear liability for severe injuries and that, for settlement purposes, the case was worth a minimum of $30,000. Russell further offered to show that defendant Mackey lacked the financial resources to pay any judgment out of her own funds and that the limits of liability under defendant's insurance policy was $15,000. Russell's evidence would show that she was forced to accept the settlement of $15,000, because that was all the money available from Mackey's insurance and there were no other funds from which a greater amount might be paid. Russell further offered to prove that a fair settlement in the case against Mackey would have been $30,000 had the defendant

been financially responsible. The district court held as a matter of law that, while the $15,000 settlement was not full compensation to Russell, Russell had accepted that sum *in full settlement of the case* and, therefore, Hartford Insurance Company was entitled to full repayment of the PIP benefits paid, since the sums paid under the settlement were duplicative of the PIP benefits.

Plaintiff Russell on appeal contended that the trial court erred in denying her an evidentiary hearing after her offer of proof, where she could have shown that the $15,000 settlement was not fully duplicative of the PIP benefits paid by Hartford and, therefore, Hartford was not entitled to full reimbursement for the PIP benefits paid. On appeal, this court affirmed the district court and held that K.S.A. 40-3113a should be construed to mean that, if the injured insured settles his *total claim* with the tortfeasor, including those elements of damage represented by PIP benefits, the recovery is duplicative, since it includes the PIP benefits. The court reasoned that it is the insured who has been given control of litigation against the third-party tortfeasor for the first eighteen months following the accident. Only after the expiration of eighteen months is the PIP insurer entitled to bring an action to recover PIP benefits paid. The insured, by settling his entire claim with the third-party tortfeasor, can effectively destroy the right of the insurer to bring an action to recover from the tortfeasor for the PIP benefits paid. If the insured does not wish to settle his claim with the tortfeasor on this basis, he can attempt to work out a settlement with the PIP insurer for a reduction in the amount to be paid in settlement for its subrogation rights. Since the plaintiff in *Russell* settled her total claim, including all elements of damage represented by the PIP benefits, for the sum of $15,000, the plaintiff had effectively barred the PIP carrier from bringing an action against the third-party tortfeasor to recover the PIP benefits paid. Under the circumstances, the PIP carrier was entitled to recover the full amount of PIP benefits paid, less a reduction for a proportionate share of the attorney fees as fixed by the court.

*Russell* thus stands for the principle that, if the injured insured settles his *total claim* with the tortfeasor and releases the tortfeasor from all further liability, the recovery is duplicative as a matter of law, and the PIP carrier has a lien and is entitled to

reimbursement for the total amount of PIP benefits paid out of the recovery made by the insured, subject to the two statutory exceptions provided for in sections (d) and (e) of K.S.A. 40-3113a. Turning to the facts in the case now before us, it is obvious that *Russell v. Mackey* does not control the result in this case. As noted above, in *Russell* the plaintiff settled her *total* claim with the tortfeasor. In the present case, there was only a *partial settlement* of the case by the insured Kroeker. Under the order approving partial settlement dated October 26, 1978, State Farm was permitted to pay into court the sum of $50,000, the limit of liability under the tortfeasor's policy. It was stipulated and agreed by the parties that the $50,000 was not ample compensation to the heirs of Glen E. Kroeker for his wrongful death. The parties further agreed that at a later time the court would determine the amount of damages suffered by the heirs of Glen E. Kroeker and any award assessed above the sum of $50,000 should be listed as a fourth class claim against the estate of Lonita V. Skaggs and paid in proportion to the other fourth class claims. Although State Farm was to be paid the sum of $5,550 out of the $50,000 settlement paid into court, State Farm's right to reimbursement for the PIP benefits would be determined in a separate declaratory action.

Thus in the present case, *plaintiff did not settle her total claim against the tortfeasor.* She proceeded to have her fourth class claim adjudicated and her damages were found by the district court of Barber County to be in the amount of $607,233.60, on which a credit was given for the $50,000 paid by State Farm on behalf of Lonita V. Skaggs's estate, leaving an unsatisfied judgment for the amount of $557,233.60. The situation in this case is the same as if Peggy Kroeker had sued the estate of the third party Lonita V. Skaggs and received a judgment for $607,233.60 and then Skaggs's insurance company had paid $50,000 to apply on the judgment.

Although the facts appear to be uncontroverted, a factual issue may remain in the case as to whether or not the $50,000 recovered by the injured insured heirs is duplicative of those elements of damages included in the PIP benefits paid by State Farm. Applying the principles of law established in *Easom* and *Russell* the $50,000 paid by Skaggs's insurance carrier is to be considered as duplicative only if that payment will result in a

double recovery for the heirs of Glen E. Kroeker. Peggy Kroeker has the burden to prove that the $50,000 paid into court did not afford her a double recovery. This is a fact issue on which both parties are entitled to have a hearing and to submit any evidence that they might have on the issue. On remand of the case, if it appears from the evidence that the actual damages suffered by defendant Kroeker were in excess of $50,000 plus the $5,550 PIP benefits paid so that she has not been compensated for all of her damages, then the district court should find that the damages recovered by the defendant are not duplicative, and State Farm is not entitled to be reimbursed for the PIP payments paid. We hold that the trial court erred in determining the issue of double recovery on summary judgment as a matter of law and that the case must be reversed and remanded to afford the parties a hearing on that issue.

The result which we have reached in this case seems inevitable, if any effect is to be given at all to the word "duplicative" as contained in K.S.A. 40-3113a. Clearly the payment of the entire $50,000 to the insured Kroeker will not result in a *double recovery,* if it can be shown that her actual damages exceeded $50,000 plus the $5,550 PIP benefits previously paid. It is clear that the issue presented is one of *statutory construction,* and this court has the duty to carry out the legislative intent where that is possible. It must be noted that in K.S.A. 40-287, which provides for subrogation rights to an insurer providing uninsured motorist coverage, the word "duplicative" is not used by the legislature. The insurance carrier is entitled to be subrogated, to the extent of uninsured motorist payments paid, to the proceeds of any settlement or judgment obtained by the insured without restriction. Certainly the legislature must have intended a different result by using the word "duplicative" in K.S.A. 40-3113a.

We also believe it important to note that in those states that have enacted no-fault statutes which specifically provide that a PIP insurance carrier is entitled to reimbursement for PIP benefits paid from any recovery by the insured if the recovery is duplicative, the courts of those states have consistently taken the identical position which we have taken in this case. The general rule followed in the United States is stated in 7A Am. Jur. 2d, Automobile Insurance § 443, p. 104, as follows:

"Where an insurer has the right to indemnification, such right extends only to

repayment for the benefits called for under the no-fault statute. Since the purpose of indemnification of the insurer is to prevent double recovery by the insured, the insurer's right to indemnification relates only to additional compensation received by the insured for the same damages as were covered by the personal injury protection benefits. If the payment received from the tortfeasor does not duplicate the PIP benefits received from the insurer, the insurer has no right to receive reimbursement out of such payment."

We note the following decisions which follow the general rule: *Bonsall v. American Motorists,* 109 Mich. App. 674, 311 N.W.2d 824 (1981); *Pfeffer v. State Auto. and Cas. Underwriters,* 292 N.W.2d 743 (Minn. 1980); *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 316 N.W.2d 348 (1982); *Blaylock v. Ga. Mutual Ins. Co.,* 239 Ga. 462, 238 S.E.2d 105 (1977). See also the annotation at 69 A.L.R.3d 830. Counsel for State Farm has not directed our attention to a single jurisdiction, having a similar statutory language, where a result has been reached contrary to that reached in this case.

The defendant next contends for a variety of reasons that the district court erred in refusing to hold that the insurance policy endorsement, which provided State Farm the right to be reimbursed for PIP funeral and survivor benefits paid, never became an effective and enforceable provision of the insurance contract. We have considered the claims of the defendant in this regard and find them to be without merit.

The judgment of the district court is reversed. The case is remanded to the district court with directions to afford the parties a hearing to determine whether the $50,000 payment made by State Farm, as the liability insurance carrier for Lonita V. Skaggs, was a matter of fact duplicative of PIP payments made by plaintiff State Farm to the defendant, Peggy Kroeker.

SCHROEDER, C.J., MILLER, and McFARLAND, JJ., dissenting.