No. 56,533

KANSAS FARM BUREAU INSURANCE COMPANY INC., AND WEST AMERI-
CAN INSURANCE COMPANY, INC., *Appellees*, v. STEPHEN FRANCIS
MILLER, *Defendant* and RANDY FOLEY, BY ETHEL MAE FOLEY, HIS
NATURAL MOTHER AND NEXT FRIEND, *Appellant/Intervenor.*

(696 P.2d 961)

Opinion filed March 2, 1985.

*Jack R. Euler*, of Euler and Euler, of Troy, argued the cause and was on the brief for appellant.

*Glenda Lyons*, of Couch, Strausbaugh & Pierce, Chtd., of Overland Park, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: This interlocutory appeal is taken by the intervenor in a district court action from an order granting summary judgment to the plaintiffs on several of his counterclaims. The facts are complicated and will be set forth in some detail.

On August 1, 1978, Randy Foley was a passenger in an automobile driven by defendant Stephen Francis Miller. The vehicle driven by Miller was involved in a one-car accident and as a result thereof Foley suffered severe permanent injury. The Miller vehicle was insured by the Hartford Insurance Company (Hartford) for the minimum coverage then authorized by law, that is, $15,000 bodily injury protection for one individual (K.S.A. 1978 Supp. 40-3107), and personal injury protection (PIP) benefits (K.S.A. 40-3107 *et seq.*). Foley was covered for PIP benefits under seven policies carried by his father on various vehicles. Four of the policies were issued by Kansas Farm

Bureau Insurance Company, Inc. (Farm Bureau); two by West American Insurance Company, Inc. (West American); and one by Hartford. Thus Hartford occupied the dual capacity of liability insurance carrier for Miller and one of the PIP carriers for Foley. As such, Hartford became the servicing carrier for the PIP benefits and eventually paid Foley $9,388.64 and claimed pro rata reimbursement from Farm Bureau of four-sevenths of the amount, or $5,364.92, and from West American of two-sevenths, or $2,682.46. See K.S.A. 40-3109(b) prior to 1984 amendment.

Hartford, in an attempt to settle its liability as Miller's carrier, proposed to Farm Bureau and West American that they waive their subrogation rights to the amounts to be paid by them as PIP benefits. If they would do so, Hartford would then propose to settle Foley's case by paying the full $15,000 liability coverage to Foley. West American paid its pro rata share of the PIP benefits and agreed to the Hartford proposal as being the only practical solution, but Farm Bureau refused to waive its claim to be subrogated once it made payment of its four-sevenths share to Hartford. Farm Bureau also refused to make its pro rata payment to Hartford, seeking to stall making any payment as long as possible. Foley's counsel made numerous demands upon Farm Bureau to waive its subrogation rights, all to no avail, and threatened to join Farm Bureau and West American for their "bad faith and outrageous conduct" in his proposed suit against Miller.

On February 1, 1980, eighteen months had elapsed from the date of the tragic accident without Foley commencing his suit against the original tortfeasor Miller. On March 18, 1980, Farm Bureau, having finally paid its pro rata share to Hartford, and West American filed suit against Miller pursuant to K.S.A. 40-3113a(c) as statutory assignees of Foley's tort claim against Miller. Foley was then allowed to intervene in the action and filed a cross-claim against Miller for his damages and counterclaims against Farm Bureau and West American. As against the two insurance companies, Foley originally specified five different counts or claims and sought:

I. A declaratory judgment specifying the statutory rights of the plaintiffs and Foley in the $15,000 liability coverage available;
II. recovery for plaintiffs' bad faith in refusing to waive their right to reimbursement for PIP benefits;

III. recovery for plaintiffs' breach of their statutory duties by actions amounting to unfair claim settlement practices;

IV. recovery for plaintiffs' outrageous conduct in refusing Foley's request, causing him severe mental and emotional distress;

V. punitive damages from plaintiffs for their fraudulent and oppressive conduct.

Foley was later granted leave to amend these counterclaims, and he added two additional claims seeking:

VI. A declaratory judgment against plaintiff Farm Bureau that its definition of "uninsured motorist" in the four policies issued to Foley's father was void, and seeking recovery of $15,000 in uninsured motorist benefits under each of the four policies; and

VII. a judgment declaring the rights of plaintiffs and Foley in defendant Miller's $15,000 liability coverage, under the terms of the PIP endorsements contained in each of the policies of insurance issued by plaintiffs.

Throughout this opinion the various claims of Foley will be referred to by the Roman numerals indicated above.

During the time the parties engaged in discovery, the trial court severed Foley's claims against the insurance companies and his claim against defendant Miller, staying the latter until the issues surrounding the plaintiffs' PIP subrogation rights were resolved. Following discovery plaintiffs and Foley entered into a stipulation of facts for purposes of their proposed motions for summary judgment on Foley's counterclaims. The stipulation provided:

"1. On August 1, 1978, the defendant, Stephen Francis Miller, was the driver of a vehicle involved in a one car accident, and the intervenor, Randy Foley, was his only passenger.

"2. The limit of liability for personal injuries to one person under the Motor Vehicle Liability Insurance policy which provides liability coverages for the defendant and his vehicle which was involved in the accident is in the amount of $15,000.00.

"3. The defendant, Stephen Francis Miller, has no known assets which would be subject to seizure under legal process for satisfaction of any judgment entered against defendant in excess of the liability coverages of his Hartford policy described in paragraph 2 above.

"4. *The intervenor Foley's claim against defendant for damages for bodily injuries has a value of not less than $75,000.00, including medical and hospitalization expenses of more than $16,000.00.*

"5. The intervenor, Foley, has received personal injury protection benefits from Kansas Farm Bureau Mutual Company, Inc. (or herein KFB) in the amount of $5,364.92 and personal injury protection benefits paid on

behalf of West American Insurance Company, (or herein West American) in the amount of $2,682.46. *These personal injury protection benefits were paid pursuant to automobile policies under which the intervenor Foley was an insured and such benefits are duplicative of intervenor's total damages as set forth in paragraph 4 above.*

"6. The carelessness and negligence of the defendant, Stephen Francis Miller, was the sole cause of the aforementioned accident on August 1, 1978. The intervenor, Randy Foley, was not guilty of any negligence which in any way caused or contributed to such accident.

"7. The intervenor, *Randy Foley, has not, and will not, settle his total claim for damages with the tortfeasor and defendant, Stephen Francis Miller.*

"8. KFB and West American brought suit in Doniphan County, Kansas, on March 18, 1980, to recover from the defendant Miller the amount of PIP benefits paid. The intervenor, Randy Foley, was permitted to intervene by order of the Court entered June 26, 1980.

"9. There was never any personal contact between any representatives of KFB or West American and the intervenor, Randy Foley.

"10. The intervenor, Randy Foley, has requested the plaintiffs, KFB and West American, to waive their rights to subrogation for PIP benefits paid to Randy Foley and the plaintiffs have refused to waive such rights.

"11. The policies of West American and KFB are attached hereto and made a part of this Stipulation of Facts.

"12. The facts herein set forth are in addition to and not in lieu of the facts contained in the pleadings and other documents existing in this case which are relevant and applicable in the determination of motions for summary judgment as enumerated and described in K.S.A. 60-256(c).

"13. The foregoing facts are stipulated for the purpose of use in connection with all Summary Judgment Motions which may be filed by plaintiffs and the intervenor against each other in this action and for no other purpose." (Emphasis added.)

Plaintiffs' and Foley's motions for summary judgment, and memoranda of law in support thereof, were then filed with the court. Following our decision in *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980), Foley voluntarily dismissed his second counterclaim, in which he sought recovery for plaintiffs' alleged bad faith. In his first and seventh counterclaims Foley sought a judgment declaring the parties' statutory and contractual rights in the $15,000 liability coverage available for defendant Miller. He was granted leave to amend these counterclaims to contend that both under the terms of K.S.A. 40-3113a(c) and under the "Conditions" section of the PIP endorsements in each of the insurance policies,

"the liability insurance coverages which are available for application toward payment of the claims of Plaintiffs and the Intervenor must be

first applied to the exhaustion thereof to that part of Intervenor's claim which is nonduplicative of plaintiffs' claims or, in the alternative, that the same must be divided between Plaintiffs and the Intervenor in the same percentages or proportions as the respective individual recoveries of the Plaintiffs and of the Intervenor in this action will bear to the total combined recovery of Plaintiffs and Intervenor against the Defendant in this action and that the Plaintiffs and Intervenor must likewise proportionately share in that part of the combined recovery (absent settlement of the total claim) for which satisfaction is not assured by automobile liability insurance coverages of the Defendant."

On September 22, 1983, the court rendered its memorandum decision on the motions for summary judgment. The court summarized its rulings in the following manner:

"1. Intervenor's counterclaim premised upon bad faith dismissed upon request of intervenor.

"2. Plaintiffs granted summary judgment upon intervenor's counterclaim for the tort of outrage.

"3. Plaintiffs granted summary judgment upon intervenor's counterclaim for punitive damages.

"4. Plaintiffs granted summary judgment upon intervenor's counterclaim for breach of statutory duty.

"5. Intervenor granted summary judgment on its counterclaim asserting the definition of 'uninsured automobile' contained in Kansas Farm Bureau as being void and unenforceable, with the Court judicially interpreting the definition of an *'uninsured automobile'*.

"6. Plaintiffs granted summary judgment upon intervenor's counterclaim asserting a theory of pro-rata distribution based on total damages or in the alternative for intervenor's damages being first paid.

"7. Intervenor granted summary judgment upon its claim that West American had waived its right to subrogation for PIP benefits paid."

Foley then sought permission to take an interlocutory appeal pursuant to K.S.A. 60-2102(b), which was granted by the Court of Appeals. Foley then filed his notice of appeal from the summary judgment granted plaintiffs on counts III, IV, V, and VII, and that part of the trial court's order on count VI wherein it interpreted and defined "uninsured automobile." The case was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

The first issue raised in this appeal is whether the district court erred in granting summary judgment to plaintiffs on count III, in which Foley sought recovery on the theory of tortious breach of contract including plaintiffs' alleged unfair claim settlement practices by a breach of statutory duties under K.S.A. 40-2404(9)(f),(g) and (n). Unfortunately for Foley all his claims

insofar as Farm Bureau is concerned hinge around its refusal to waive its right to be subrogated for whatever amounts it might ultimately have to pay Hartford for PIP benefits. As to West American, Foley asserts it concealed the fact of its initial waiver of subrogation rights, disregarded the same and subsequently joined with Farm Bureau in bringing this suit. The record discloses that West American's original acceptance of Hartford's proposal that all the insurance companies waive subrogation and allow payment of the full policy limits to Foley was made in an attempt to cooperate with Hartford in effecting a settlement with Foley. Due to the position taken by Farm Bureau no such settlement was forthcoming. We see no need to go into the numerous allegations upon which Foley bases his claim for a tortious breach of contract by plaintiffs. As pointed out by the trial court the stipulation of facts reveals nothing which would constitute a breach of plaintiffs' statutory duties and under our recent decisions in *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 652 P.2d 665 (1982), and *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, we find nothing to support a cause of action in tort. The trial court did not err in granting plaintiffs' summary judgment upon Foley's claim for tortious breach of contract.

As to claim IV, based upon plaintiffs' alleged outrageous conduct, Foley has not addressed the issue as a separate point on appeal and appears to have abandoned this claim. In any event, nothing in the record would support a claim of outrageous conduct by either Farm Bureau or West American. See *Neufelt v. L. R. Foy Constr. Co.*, 236 Kan. 664, 693 P.2d 1194 (1985).

The next issue raised is whether the district court erred in decreeing that plaintiffs are entitled to be fully reimbursed from defendant's liability insurance coverage for PIP benefits paid to Foley even though his actual damages far exceed the liability coverage available and admittedly his case against the tortfeasor will not be settled. The trial court ruled that "it is immaterial as to what an injured person's total damages may be," and held that under *Easom v. Farmers Insurance Co.*, 221 Kan. 415, 560 P.2d 117 (1977), *Russell v. Mackey*, 225 Kan. 588, 592 P.2d 902 (1979), and the provisions of K.S.A. 40-3113a the plaintiffs were entitled to full reimbursement.

At the time of the trial court's decision, it did not have the

benefit of our recent opinion in *State Farm Mut. Auto Ins. Co. v Kroeker*, 234 Kan. 636, 676 P.2d 66 (1984). In *Kroeker* we addressed for the first time the contention now made by Foley that a PIP insurer should not be entitled to reimbursement for benefits paid where the actual damages suffered by the insured exceed the liability coverage available plus the amount of PIP benefits received. In *Kroeker* it appeared that the value of the insured decedent's claim against the tortfeasor was far in excess of the tortfeasor's liability coverage of only $50,000. State Farm was the insurance carrier for both. It first paid PIP benefits of $5,550 to the defendant, the surviving widow and heir of the insured decedent. State Farm paid the $50,000 liability coverage into the district court, and then sought to recover from that amount the full $5,500 previously paid to defendant. The lower court entered judgment in favor of State Farm, holding that its deduction of PIP benefits from the liability settlement was proper.

On appeal we reversed. We stated first that the *Russell* case, allowing a dollar-for-dollar reimbursement to the PIP carrier from the settlement received by the injured insured, was not controlling on the facts of *Kroeker* because defendant Kroeker had *not* settled her total claim against the tortfeasor. Writing for the court, Justice Prager then stated:

"Although the facts appear to be uncontroverted, a factual issue may remain in the case as to whether or not the $50,000 recovered by the injured insured heirs is duplicative of those elements of damages included in the PIP benefits paid by State Farm. Applying the principles of law established in *Easom and Russell* the $50,000 paid by Skaggs's insurance carrier is to be considered as duplicative only if that payment will result in a double recovery for the heirs of Glen E. Kroeker. Peggy Kroeker has the burden to prove that the $50,000 paid into court did not afford her a double recovery. This is a fact issue on which both parties are entitled to have a hearing and to submit any evidence that they might have on the issue. On remand of the case, if it appears from the evidence that the actual damages suffered by defendant Kroeker were in excess of $50,000 plus the $5,550 PIP benefits paid so that she has not been compensated for all of her damages, then the district court should find that the damages recovered by the defendant are not duplicative, and State Farm is not entitled to be reimbursed for the PIP payments paid. . . .

"The result which we have reached in this case seems inevitable, if any effect is to be given at all to the word 'duplicative' as contained in K.S.A. 40-3113a. Clearly the payment of the entire $50,000 to the insured Kroeker will not result in a *double recovery*, if it can be shown that her actual damages exceeded $50,000 plus the $5,550 PIP benefits previously paid." (Emphasis in original.) *Kroeker*, 234 Kan. at 646-47.

*Kroeker* controls the issue in this case. The facts as stipulated herein make it clear that Foley's damages far exceed the $15,000 limits of the tortfeasor's policy. However, plaintiffs contend that Foley has, in effect, stipulated himself out of court in number 5 of the stipulation wherein it is stated:

"These personal injury protection benefits were paid pursuant to automobile policies under which the intervenor Foley was an insured and such benefits are duplicative of intervenor's total damages as set forth in paragraph 4 above."

Paragraph 4 provided:

"The intervenor Foley's claim against defendant for damages for bodily injuries has a value of not less than $75,000.00, including medical and hospitalization expenses of more than $16,000.00."

We do not interpret the stipulation as plaintiffs suggest. It is clear to us, in reading the entire stipulation, that the language in paragraph 5 about the PIP payments being duplicative can only apply to the *total amount* of damages as set forth in the stipulation and certainly not to any lesser amount. To construe the stipulation otherwise would negate the reason for the stipulation in the first place. All parties were fully aware of the various arguments and positions of each other and the stipulation was obviously entered into to seek a determination of whether the PIP benefits were duplicative and not to resolve that issue. In addition, as there is no factual question here as to whether Foley's total damages exceed the $15,000.00 coverage plus the PIP payments, there is no need to remand the case as was done in *Kroeker*. The trial court's granting of summary judgment upon this issue must be reversed. Neither Farm Bureau nor West American have any subrogation right to recover PIP benefits paid as those payments were not duplicative of the $15,000 to be paid by the liability carrier.

The third issue on appeal is whether the trial court erred in judicially interpreting and defining the term "uninsured automobile," as used in plaintiff Farm Bureau's insurance policies, in a manner foreclosing recovery of uninsured motorist benefits by Foley on the facts of this case. Each of the four Farm Bureau policies under which Foley was insured included uninsured motorist coverage with benefit limits of $15,000 per policy for loss sustained by any one insured. However, the policy went on

to define "uninsured automobile" as "an automobile with respect to the ownership, maintenance or use of which there is *no bodily injury liability insurance* applicable at the time of the accident. . . ." (Emphasis added.)

In his counterclaim on this issue Foley asked the court for a judgment against Farm Bureau declaring void and unenforceable its definition of "uninsured automobile." Specifically, Foley asked the court to redefine "uninsured automobile" as

"an automobile with respect to the ownership, maintenance or use of which the bodily injury liability *insurance coverages applicable at the time of an accident are not in an amount equal to or in excess of all actual damages sustained by any 'insured'* that are caused by any such 'uninsured automobile'." (Emphasis added.)

Under this definition, defendant Miller's automobile would qualify as an "uninsured automobile" because the liability insurance coverage applicable at the time of the accident was the minimum required by state law, $15,000, while Foley's damages sustained in the accident were not less than $75,000. The trial court agreed with Foley that Farm Bureau's definiton of an "uninsured automobile" was contrary to public policy and was void. However, the court declined to adopt the definition offered by Foley and instead "judicially interpreted" the term "uninsured automobile" in the insurance policies as being

" 'an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile.' "

Under this definition the court concluded that because defendant Miller had liability coverage of $15,000, the minimum required by law, he was not operating an "uninsured automobile" and Foley was therefore not entitled to uninsured motorist benefits under Farm Bureau's policies. We agree with the trial court's ultimate conclusion that Foley was not entitled to recover under the "uninsured motorist" provisions of the Farm Bureau policies. The legislature, in 1981, closed the gap, which Foley seeks to do by his definition of "uninsured motorist," when it amended the statute to include provisions for "underinsured motorist" protection. K.S.A. 1984 Supp. 40-284(b). We have rec-

ognized, at least for some purposes, that underinsured motorist coverage is separate and distinct from uninsured motorist coverage even though both are now included in the same statute. *Haas v. Freeman,* 236 Kan. 677, 693 P.2d 1199 (1985). To judicially expand the original statute which required only uninsured motorist coverage to include underinsured motorist coverage, as sought by Foley, would be to write into the statute provisions which the legislature clearly did not include or intend. This we cannot do. We find no error in the court's granting of summary judgment for plaintiff Farm Bureau on Foley's claim to uninsured motorist benefits.

The next issue on appeal is Foley's claim to punitive damages. Having already determined Foley's claims of tortious breach of contract adversely to him, he now has no basis for the assessment of punitive damages. No error is shown.

Finally, Foley seeks to recover attorney fees under K.S.A. 40-256. Having shown no bad faith on the part of the plaintiffs and as there existed a valid controversy in this case, at least prior to our decision in *Kroeker,* the allowance of attorney fees is not justified. *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973).

The last issue on appeal is raised by plaintiff West American, which contends the trial court erred in ruling West American waived its right to subrogation. The issue is not properly before us insofar as West American filed no cross-appeal from the trial court's order. See *Haas v. Freeman,* 236 Kan. 677. In any event the issue is moot in view of our holding based upon *Kroeker* that neither plaintiff in this case is entitled to subrogation or reimbursement of its PIP payments.

The judgments of the trial court are affirmed with the exception of its judgment in favor of plaintiffs on Foley's claim that the PIP benefits paid were not duplicative of the available $15,000 liability insurance proceeds. On that issue the summary judgment for plaintiffs is reversed and the case remanded with directions to enter summary judgment for Foley denying plaintiffs subrogation for PIP benefits paid.

The judgment is affirmed in part, reversed in part and remanded for further proceedings in accordance with the views expressed herein.