No. 52,166

RUBY IRENE QUESENBURY, GREG FELDMAN and CINDY FELDMAN, *Appellees,* v. WICHITA COCA COLA BOTTLING COMPANY, INC.; RICHARD D. COX, and AMERICAN INSURANCE COMPANY, *Appellees,* and TRINITY UNIVERSAL INSURANCE COMPANY, *Intervenor-Appellant.*

(625 P.2d 1129)

Opinion filed March 25, 1981.

*Christopher Randall,* of Turner and Boisseau, Chartered, of Wichita, argued the cause and was on the brief for intervenor-appellant Trinity Universal Insurance Company.

*Harold K. Greenleaf, Jr.,* of Smith, Greenleaf & Brooks, of Liberal, argued the cause, and *Steven L. Brooks,* of the same firm, was on the brief for the appellees.

The opinion of the court was delivered by

McFARLAND, J.: This appeal is a dispute between plaintiffs' attorney and plaintiffs' insurer as to whether the attorney is entitled to a fee on the insurer's subrogated portion of settlement proceeds recovered from the defendant tort-feasor for property damage. The trial court held in favor of the attorney, and the insurer appeals.

The basic facts are as follows. On November 7, 1978, a Wichita Coca Cola Bottling Company truck struck the residence of Ruby Irene Quesenbury. The cause of the accident was the employee truck driver's failure to set the brake before leaving the vehicle to make a delivery. Ms. Quesenbury had a homeowners policy with

the intervenor, Trinity Universal Insurance Company (Trinity). On March 5, 1979, Ms. Quesenbury settled with Trinity for $10,572.18 and entered into a subrogation agreement with her insurer.

On December 4, 1979, Ms. Quesenbury and two residents of the home filed the action herein against the Coca Cola Bottling Company, its employee driver, and its insurance carrier, seeking recovery in the amount of $20,165.48 for damage done to the home and its contents. On February 12, 1980, Trinity filed a motion to intervene as a third party plaintiff, and a third party petition. The hearing on the motion and a discovery conference were scheduled for March 4, 1980.

No transcript of the proceedings of March 4, 1980, has been presented, but the order filed March 17, 1980, relative thereto, states that three attorneys appeared, representing plaintiffs, defendants, and the intervenor (Trinity), respectively, and announced the case had been settled. The only remaining issue was the distribution of the settlement proceeds.

On April 7, 1980, the question of distribution of the fund was heard by the court. The only matter in controversy was whether plaintiffs' attorney was entitled to a fee from Trinity's $10,572.18 share of the settlement. No evidence was presented by plaintiffs' attorney or Trinity. The court allowed plaintiffs' attorney one-third of Trinity's share of the proceeds. Trinity appeals from that determination. Additional facts will be stated as needed relative to particular aspects of the opinion herein.

Ordinarily, the right of an attorney to compensation for his services depends upon a contract of employment, express or implied. There is no claim herein that plaintiffs' attorney was ever employed by Trinity to represent it in this action.

There are, however, two exceptions to the above-stated general rule. The first category of exceptions are those instances where express statutory provisions permit one party to recover attorney fees from another party. Illustrative of such statutes are: (1) K.S.A. 40-256, which allows an insured, upon successfully maintaining a policy action against his insurer, to recover his reasonable attorney fees if the court finds the insurer refused to pay the claim "without just cause or excuse"; and (2) K.S.A. 1980 Supp. 60-1610(g), which permits allowance of attorney fees to either party in a divorce case "as justice and equity may require." In Kansas

attorney fees of the prevailing party in litigation are not recoverable from the defeated party in the absence of clear and specific statutory provision therefore. *Newton v. Hornblower, Inc.,* 224 Kan. 506, 582 P.2d 1136 (1978).

This category of exceptions does not apply to the case before us for a variety of reasons, not the least of which is the lack of an applicable statute. Additionally, no party herein is seeking to recover his attorney fee expenses of litigation—rather, a party's attorney is seeking additional fees from the proceeds of the suit which do not belong to his client.

The second exception to the rule involves situations where an attorney has, through his services to his client, created a fund in which more than his client will share. The attorney's right to receive an attorney's fee on nonclients' interests in such fund may arise by specific statutory provision. Illustrative of such a statute is K.S.A. 1980 Supp. 40-3113a (*e*), which deals with funds arising from actions against tort-feasors wherein personal injury protection benefits have previously been paid to the injured insured. The various cases construing this statute and its predecessor have no application to the case before us, as personal injury protection benefits are not involved. There is no statute authorizing plaintiffs' attorney to collect fees from the subrogated insurer's portion of the fund herein.

A number of jurisdictions permit an attorney to collect a fee on the fund in the absence of express statutory authorization, based on equitable considerations. As heretofore determined, there is no express statutory authorization for the trial court's allowance of an attorney fee against Trinity's share of the fund. Accordingly, the only basis for the fee herein would have to be under said equitable principles.

The precise issue before us apparently is one of first impression in Kansas. The two cases closest in point, but distinguishable, are *Insurance Co. v. Cosgrove,* 85 Kan. 296, 116 Pac. 819 (1911), *aff'd on rehearing* 86 Kan. 374, 121 Pac. 488 (1912); and *Western Fire Ins. Co. v. Phelan,* 179 Kan. 327, 295 P.2d 675 (1956). In *Cosgrove* an insured successfully recovered against the tort-feasor after having settled with his own insurer. Subsequently, the insurer sued its insured for recoupment of what it had paid. There was apparently no subrogation agreement involved and the insurer did not participate in the action against the tort-feasor. The

*Cosgrove* case offers little in the way of assistance to the issue before us, as it involves whether the insured can deduct his attorney fees from the original case.

The *Phelan* case again involved a recovery by an insured against a tort-feasor, with the insured pocketing the insurer's part of the proceeds. The action on appeal was brought by the insurer against the insured to obtain its money. In *Phelan,* however, the insurer had a contract with plaintiff's counsel to represent it in regard to its subrogated interest. Accordingly, the *Phelan* case does not involve the issue before us.

Whether a subrogated property insurer is obligated, absent a contract, to pay a fee to the insured's attorney who recovers damages from a third party tort-feasor is the subject of an annotation in 2 A.L.R.3d 1441. Where such compensation has been allowed, it is generally on the basis that it is unfair and inequitable to permit an insurance company to sit back, do nothing, and have its subrogated interest collected without cost to the company. The logic is persuasive. Were it otherwise, the insured and insurer would each try to outwait the other in bringing the action against the tort-feasor. The one waiting the longer time would pay no attorney fees in the event of recovery from the tort-feasor. We conclude that an attorney under appropriate circumstances may be allowed a fee from a portion of a fund recovered through his efforts based upon equitable considerations.

In determining whether such fees should be allowed the court should consider each case on its facts and determine whether equity should be invoked. Consistent with the theory of equitable relief, the person seeking equity has the burden of establishing the propriety of its invocation. Accordingly, the insured's attorney herein had the burden of establishing sufficient facts to justify the allowance under equitable considerations.

What then does an attorney need to establish in order to be allowed fees in such circumstances? In reviewing cases from other jurisdictions, a factor high on the list is whether the insurer participated in the action on its own behalf. Our research reveals no case where fees were allowed to the insured's counsel when the insurer entered the lawsuit on its own behalf to litigate its claim.

No complete list of matters to be considered in making equitable determinations is possible. By its very nature equity is flex-

ible and adaptable to the needs of the particular set of facts within certain general principles. Matters which might well be considered by the court include the following: Did the insured's attorney in good faith seek employment by the insurer on the subrogated portion of the claim? Was the attorney's overture turned down or just ignored? Did the insurer acquiesce in the representation after suit was filed? Was the subrogated interest severable from the insured's claim? What role did the attorney play in the recovery; that is, was the litigation complex or the recovery doubtful, either of which made his services highly valuable to the insurer? In viewing the totality of the circumstances involved, would it be inequitable to let the insurer take the subrogated proceeds free of attorney fees?

Let us now look at the circumstances involved herein. In so doing we must rely on the record. Matters not before the trial court will not be considered. No testimony or documentary evidence was presented to the trial court as to what had transpired between the insured's attorney and Trinity. The insured's attorney made the following statement at the April 7, 1980, hearing:

"Our file reflects we started on this matter sometime in the middle of September of 1979 and proceeded from there concerning the action against Coca Cola. And I think prior to that time there was some problem as to our insurance carrier, being Trinity, and they didn't seem to see fit to want to pay any attorneys fees or were interested in Mrs. Quesenbury collecting any more monies than what we have already paid. And they didn't want to cooperate in any way in the lawsuit itself. And we filed it, to my knowledge, and the only thing Trinity has done to aid Mrs. Quesenbury to get any money besides what they paid her is file an intervenor and that wasn't on her behalf, but was filed as a result of the notice. And they filed an intervening petition so their subrogation rights would be protected."

Later in the hearing the same attorney indicated that he had represented Ms. Quesenbury in her negotiations with Trinity which resulted in the settlement of her claim on the policy. The record is bare of other references to the relationship between the attorney and Trinity except a general statement indicating longstanding hostility between the two relative to the case.

The insured's attorney denies Trinity was ever permitted to intervene. The order reflecting the March 17, 1980, proceeding shows Trinity participating as a party and being a party to the settlement. We must conclude Trinity was a party to the action. We note also that Trinity's motion to intervene on its own behalf came just two months after suit was filed and, as acknowledged in

open court by the insured's attorney, was the result of the insurer receiving notice of suit. We do not know when such notice was received, but no delay in responding thereto was claimed or shown.

We further note that an action to recover for Trinity was not a legally challenging matter, inasmuch as the facts indicate clear liability on the part of an apparently financially responsible defendant who can be readily served with summons.

On the basis of the meager record in this case we have no hesitancy in concluding that there were insufficient facts presented to the court to warrant an allowance of a fee on equitable considerations to plaintiffs' attorney from Trinity's subrogated share of the settlement proceeds. The record indicates that the attorney fee in dispute herein has been disbursed to plaintiffs' attorney.

The judgment is reversed and the case is remanded with directions to enter an order for the return of the erroneously disbursed funds and their subsequent disbursement to Trinity Universal Insurance Company.