(681 P.2d 683)
No. 55,913

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, *Appellant,* v. WALTER L. GRIFFIN, *Appellee.*

Opinion filed May 24, 1984.

*James G. Keller,* of Davis, Unrein, Hummer & McCallister, of Topeka, for the appellant.

*Fred W. Phelps, Jr.,* of Phelps—Chartered, of Topeka, for the appellee.

Before FOTH, C.J., PARKS and BRISCOE, JJ.

FOTH, C.J.: This is an action by an insurance carrier against its "insured" to recover duplicative personal injury protection (PIP) benefits. It arose out of a 1978 automobile accident in which the defendant Walter Griffin was a passenger in a car driven by John Huske, and the other driver was Elmer Schwindt. Huske's insurance carrier was American Family Mutual Insurance Company, the plaintiff in this suit. The policy included PIP coverage for passengers.

In 1978 Griffin brought suit against Schwindt for his personal injuries. In May, 1979, Griffin's attorney, Fred W. Phelps, Jr., wrote American Family and asked it to make PIP payments to the defendant, noting that the company would "have a legal right to subrogation or indemnification benefits in the event Mr. Griffin were to ever obtain some type of judgment." The insurance company responded to Mr. Phelps, explaining that its delay

in paying benefits was at Griffin's request, offering to resume payments, and concluding, "We trust you will protect our interest in this matter." It ultimately paid $722.03 in PIP benefits to Mr. Griffin. Phelps did not respond to American Family's letter, and did not communicate with it further about the progress of the suit against Schwindt.

In October, 1979, Griffin negotiated a settlement with Schwindt in the amount of $750.00 and his suit was dismissed. American Family found out about the settlement in March, 1980, and wrote Mr. Phelps and Mr. Griffin asking for reimbursement under the subrogation provision of K.S.A. 40-3113a. Neither Phelps nor Griffin responded, and on September 15, 1982, American Family brought this action against Griffin to recover the duplicative benefits he had received. The trial court granted summary judgment in favor of American Family, but reduced its recovery in the amount of a reasonable attorney fee for Phelps' services in the action against Schwindt. This was determined to be one-third, or $240.67, resulting in a net judgment against Griffin of $481.36, plus interest and costs.

American Family appeals the deduction of an attorney fee from its judgment. It contends it should not have to pay Phelps a fee because it derived no benefit from his services. It points to his lack of response to its letter while the tort suit was pending, his failure to keep it advised of the progress of the suit and settlement negotiations, his failure to recognize its subrogation right after he effected the recovery despite his recognition of it when demanding PIP benefits for his client, and his defense of the present suit in which it was forced to employ other counsel. As a matter of equity, it says, it should not have to pay two fees to recover money which Phelps should have secured for it for one fee.

The right of a PIP carrier to recoup benefits paid and its obligation for attorney fees have both been the subject of analysis by the appellate courts of this state. The latest recapitulation of legislative and judicial history is found in *Johnston & Johnston, P.A. v. Gulf Ins. Co.*, 8 Kan. App. 2d 401, 659 P.2d 249 (1983). The following principles have evolved:

1. Under K.S.A. 1975 Supp. 40-3113 the PIP carrier had a right of "reimbursement" from its insured for duplicative PIP benefits recovered from a tortfeasor, and a right of "indemnity" from a

tortfeasor who paid the insured with knowledge of the insurer's claim. The reimbursement right was free of any claim for fees by the insured's attorney. *Easom v. Farmers Insurance Co.,* 221 Kan. 415, 560 P.2d 117 (1977).

2. In 1977, 40-3113 was repealed and replaced by K.S.A. 40-3113a. The new statute eliminated the insurer's rights of "reimbursement" and "indemnity," replacing them with a right of *"subrogation,"* a *"lien" on any recovery by the insured,* and a right to intervene in any action by the insured against a tortfeasor. K.S.A. 40-3113a(*b*). The insurer also became liable for a proportionate share of the insured's attorney fees, to be fixed by the court, thus eliminating the "free ride" for insurers authorized by *Easom.* K.S.A. 40-3113a(*e*); *Nitchals v. Williams,* 225 Kan. 285, 288, 590 P.2d 582 (1979).

3. Where the insured recovers a judgment against a tortfeasor, the court in which the recovery is made is to allocate a portion of the insured's attorney fees to be paid by the PIP carrier even though the carrier is not a party to the action. *Potts v. Goss,* 233 Kan. 116, 118, 660 P.2d 555 (1983). This is a "post-judgment intramural matter" between the insured and the PIP carrier, and a separate action is not required.

4. Where a settlement is effected without a judgment, the carrier could bring an independent action against its insured to recover duplicative PIP benefits under the "reimbursement" provisions of former 40-3113. *Hawkeye Security Ins. Co. v. Nelson,* 6 Kan. App. 2d 17, 626 P.2d 795 (1981).

5. Where a settlement exceeds the PIP benefits paid, in the absence of proof to the contrary, there has been a duplicative recovery and the carrier may recover in full the PIP benefits it has paid, less its proportionate share of attorney fees. *Russell v. Mackey,* 225 Kan. 588, 592 P.2d 902 (1979).

6. Finally, and most important here, the PIP carrier must pay its share of the fees even if it is also the tortfeasor's liability carrier, and thus its "recovery" of PIP benefits paid is merely an entry on its own books. *Ballweg v. Farmers Ins. Co.,* 228 Kan. 506, 618 P.2d 1171 (1980). Thus, the PIP carrier's obligation to pay attorney fees does not depend on an actual pecuniary benefit to it from the activities of the insured's attorney.

Under the last of these principles the "no benefit" argument of American Family must fail. In fact, Phelps' efforts did "benefit"

the company by securing the $750.00 recovery which included all PIP benefits paid, without effort or expense on its part. He thereby fulfilled the statutory prerequisite for entitlement to a fee from the PIP carrier.

The question then becomes whether Phelps, by some conduct of his, forfeited his right to the fee otherwise due.

American Family's complaints about Phelps' lack of communication, failure to protect its rights, and adverse position in this suit, would all have some merit if Phelps had ever been American Family's attorney. It is clear he was not. "An attorney-client relationship can be created only by a contract of employment, express or implied." *Young v. Hecht,* 3 Kan. App. 2d 510, Syl. ¶ 2, 597 P.2d 682, *rev. denied* 226 Kan. 793 (1979). See also *Caldwell v. Bigger,* 76 Kan. 49, 90 Pac. 1095 (1907); *Alexander v. Russo,* 1 Kan. App. 2d 546, 571 P.2d 350 (1977). The letter from American Family "trusting" that Phelps would represent its interests cannot be construed as a contract of employment if for no other reason than that, even if it could be construed as an offer to employ him, it was not accepted.

The obligation to pay a fee, standing alone, does not create the attorney-client relationship. Many statutes create fee obligations, some even to attorneys for adverse parties. Others, like this one, create an obligation to an attorney who is basically aligned with the paying party in the underlying suit. Indeed, even in the absence of a statute there may be in some instances an equitable obligation to pay an aligned party's attorney. *Quesenbury v. Wichita Coca Cola Bottling Co.,* 229 Kan. 501, 625 P.2d 1129 (1981). Neither a statutory nor an equitable obligation to pay fees converts the paying party into a "client" of the receiving attorney.

We conclude that in the absence of an attorney-client relationship the conduct complained of did not work a forfeiture of Phelps' fee.

American Family also contends that the mere fact it had to bring this suit should relieve it of its obligation. It points to the pattern evident in most of the decided cases where the tort recovery is paid into court and the court in effect "divides the pot." Under that procedure the insurer incurs no additional expense and the insured's attorney "earns" the fee paid by the insurer.

While that may be the procedure contemplated by the statute in the ordinary case, the statute is not all-encompassing. It simply does not cover a case where the recovery is paid directly to the insured, either without suit or, as here, upon dismissal of the suit. The statute does give the insurer authority to intervene in its insured's action to protect its lien and right of subrogation, and gives the trial court the right to determine the entire fee question after judgment. If it does intervene the insurer obviously will incur additional attorney fees, but will not be relieved of its obligation to the insured's attorney. *Cf. Potts v. Goss,* 233 Kan. 116, where, although it didn't intervene, the company hired counsel to observe and eventually brought an independent action. Despite the obvious additional expense, the company was found liable for its share of fees and its contention to the contrary was found to be frivolous.

Finally, American Family rather obliquely suggests there should be no fee because the $750.00 may have been spent by Griffin with Phelps' connivance. An insured who recovers damages which includes amounts for which he has been reimbursed by his insurer holds in trust for the insurer that part of the recovery representing the reimbursement. *Dondlinger & Sons' Constr. Co. v. EMCCO, Inc.,* 227 Kan. 301, Syl. ¶ 7, 606 P.2d 1026 (1980); *Ellsaesser v. Mid-Continent Casualty Co.,* 195 Kan. 117, 403 P.2d 185 (1965). If Griffin spent the money he breached his trust. If he did so on Phelps' advice, Phelps may also have some liability. See Sampson, *No Fault — The Insurer's Reimbursement Rights Under the New Statute,* 46 J.B.A.K. 211, 214 (1977). In this record, however, there is no evidence or proffer of evidence as to the fate of the $750.00 after its receipt by Griffin. Any liability on a breach of trust theory must be determined in a different lawsuit.

We conclude that the trial court properly gave Griffin credit against his obligation to American Family for a reasonable fee for his attorney.

Affirmed.