(138 P.3d 359)
No. 94,863

VIRGINIA KAY JERBY, MARK A. JERBY, CINDY K. GRIEVE, DANIEL J. JERBY, and ANGELA D. ARMENT, *Appellees*, v. TRUCK INSURANCE EXCHANGE, *Appellant*.

Opinion filed July 14, 2006.

*Daniel F. Church* and *Jason J. Montgomery*, of McAnany, Van Cleave & Phillips, P.A., of Roeland Park, for appellant.

*Todd N. Thompson*, of Thompson Ramsdell & Qualseth, P.A., of Lawrence, for appellees.

Before MCANANY, P.J., MALONE and CAPLINGER, JJ.

MCANANY, J.: The family of Alan Jerby brought this action following Alan's death in a motor vehicle accident. Virginia Kay Jerby, his widow, received worker's compensation benefits related to Alan's death. She and her four adult children also reached a settlement with the company that insured Chet Kuhlman, the driver of the other vehicle who caused the collision that resulted in Alan's death. The family brought this action to obtain a judicial declaration that the settlement proceeds from Kuhlman's insurance carrier were not subject to the statutory lien of the workers compensation insurance carrier that paid benefits to Virginia and do not constitute a setoff against future workers compensation benefits. The

district court entered summary judgment in favor of the Jerby family, and the workers compensation insurance carrier, Truck Insurance Exchange, appeals.

We will refer to the four adult children of Alan Jerby collectively as "the children," and his widow, Virginia Kay Jerby, as Virginia.

Alan Jerby, age 57, worked as a mechanic for NCK, LLC. NCK owned and operated implement companies in north-central Kansas, including McClymont Implement in Smith Center. Jerby earned approximately $40,000 per year. He died on April 15, 2003, as a result of injuries suffered in a job-related automobile accident near Smith Center. Truck Insurance Exchange provided workers compensation coverage for NCK's employees, including Jerby. The other driver, Kuhlman, had liability insurance coverage of $100,000 through American Family Insurance Company.

In the Summer of 2004, American Family offered to settle the claims against Kuhlman for its policy limit of $100,000. The losses resulting from Jerby's death exceeded this amount. The lost wages alone caused by Jerby's death were at least $350,000. The Jerby family accepted the offer, and American Family sent its settlement draft to their attorney on October 15, 2004. The record does not disclose whether the settlement was conditioned on the release of Kuhlman. Since the settlement occurred without the Jerby family having to file suit against the tortfeasor, there was no hearing to either approve the settlement or apportion the proceeds among Jerby's heirs. The settlement proceeds were deposited in the trust account of the family's attorney where they remain today.

A few days later, on October 19, 2004, Virginia attended a settlement hearing in the workers compensation proceedings that followed her husband's death. Counsel for Jerby's employer and its insurer advised the administrative law judge of the terms of the settlement, which consisted of an initial payment of $40,000, plus $33,696 for past due benefits for 78 weeks since Jerby's death, and ongoing payments of $432 per week for the remainder of Virginia's life, or until the maximum benefit of $250,000 has been reached, whichever first occurs.

When Truck Insurance Exchange asserted lien rights against the settlement proceeds, the Jerby family initiated this declaratory judgment action on October 26, 2004.

## The District Court's Ruling

The district court noted that the purpose of the insurer's subrogation rights is to avoid duplicative recoveries by the employee. The court concluded that the American Family settlement was not duplicative of the workers compensation benefits paid by Truck Insurance Exchange because the settlement did not exceed the amount of Jerby's actual lost wages. Truck Insurance Exchange argues that when an employee or a deceased employee's dependants recover money for lost wages under a workers compensation policy and also from the tortfeasor, the recovery is duplicative from the first dollar. Truck Insurance Exchange contends that the district court erroneously focused on the amount of the recovery rather than the type of damages recovered. This appeal raises a question of statutory interpretation over which our review is unlimited. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

## The Statute

### K.S.A. 44-504 states:

"(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse."

The fundamental rule of statutory interpretation is that the intent of the legislature governs, where it can be ascertained. *Wishon v. Cossman*, 268 Kan. 99, 102, 991 P.2d 415 (1999). When a statute is unambiguous, the reviewing court must give effect to the intention of the legislature as expressed, rather than determine what the law should be. However, when the meaning of the statute is, on

its face, uncertain, the court may consider the historical background, the circumstances attending its passage, its purpose, and its effect under various circumstances. 268 Kan. at 102. All provisions of a statute are to be considered *in pari materia*, rather than as isolated parts, with the objective of reconciling different provisions so as to make them consistent and harmonious. *State v. Gordon*, 275 Kan. 393, 402, 66 P.3d 903 (2003).

The earlier version of K.S.A. 1992 Supp. 44-504(b) in effect before 1993 provided:

"In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien."

K.S.A. 44-504(b) was amended to its present form in 1993 to codify our Supreme Court's decision in *McGranahan v. McGough*, 249 Kan. 328, 334, 820 P.2d 403 (1991). The change from a lien "against such recovery" to the current "against the entire amount of such recovery" is not significant in the context of the current dispute. See *Wishon*, 268 Kan. at 105. The pre-1993 version of K.S.A. 44-504(b) was found to be clear and unambiguous in *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 195-96, 708 P.2d 533 (1985). However, that was in the context of a dispute over the nature of the damages recovered, not the amount. The current version of the statute is silent on the issue now before us.

### The Workers Compensation Cases

The workers compensation cases relied upon by the parties address the issue of duplicative recoveries from the perspective of whether the damages that were the basis for the workers compensation award were of the same kind as the damages that were the basis for the tort settlement. They do not consider the amount of the recovery. Thus, they are not particularly instructive.

### McGranahan

Virginia and the children rely on *McGranahan* for the proposition that an undefined portion of their tort settlement for Virginia's

loss of consortium is not a double recovery since there is no workers compensation benefit for loss of consortium. Thus, the proceeds of such a claim are beyond the employer's lien under K.S.A. 44-504(b).

They are correct in this regard. However, since *McGranahan* dealt only with the nature of damages claimed but not the amount of damages, it does not shed light on the ultimate question whether there are duplicative recoveries when the nature of the damages in the workers compensation case and the tort settlement are the same, but the amount of the tort settlement does not fully compensate the claimants for their loss.

In *McGranahan*, as here, the employer and its workers compensation insurance carrier sought to recover, out of the proceeds of a tort settlement, the workers compensation benefits previously paid to the injured worker. The injured worker received workers compensation benefits for temporary total disability, medical expenses, and permanent partial disability. He then sued the tortfeasor and, in the course of the litigation, settled his claim. In the settlement the tortfeasor agreed to confess judgment in the amount of $10,000 based upon the parties' stipulation. The parties stipulated that the settlement was based upon the claims for pain and suffering, for loss of services for the injured worker's wife, and for medical expenses of $1,000. The district court approved the settlement but limited the application of the employer's lien to $1,000 of the settlement that related to plaintiff's medical expenses.

On appeal, our Supreme Court noted that there is no double recovery for the injured worker when the settlement of the tort claim is for damages not compensable under workers compensation. Thus the proceeds of the settlement attributable to the loss of services claim, for which no workers compensation benefits were paid, are not subject to the employer's lien. However our workers compensation law does provide for compensation for pain and suffering to the extent that a worker's disability award is based upon the pain that accompanies the performance of work. Thus, the employer's lien does extend to that portion of the settlement which is attributable to the claim for pain and suffering.

### Wishon

*Wishon*, which Virginia and the children also rely on, turns, like *McGranahan*, on the nature of the damages, not their amount. It does not help us resolve the issue of the employer's lien rights when the damages claimed against the tortfeasor are the same as the damages compensated under workers compensation but the tort recovery does not fully compensate the plaintiff for all such damages.

Wishon was injured on May 18, 1994. His employer continued to pay him wages to September 1, 1995. Wishon sued the tortfeasor for damages, limiting his lost wage claim to his post-September 1, 1995, loss. He ultimately obtained a $150,000 judgment. His employer asserted its K.S.A. 44-504(b) lien claim for $16,890.98 in paid medical bills and $38,570.59 for wages paid. The district court found, and the Supreme Court affirmed, that the employer's lien was limited to the amount of medical expenses paid and did not include the wages paid for the period before September 1, 1995.

### Houston

Truck Insurance Exchange relies on *Houston*, which also considered the nature of the claims settled but not the amount of the settlement. Houston settled with the tortfeasor for $40,000. The parties did not identify in the settlement the elements of damage included. The amount of workers compensation paid to Houston and the amount of his tort settlement "essentially, cancel each other out." 238 Kan. at 195. Houston claimed he should be able to take approximately $2,300 of the settlement free of his employer's lien since the settlement included his claim for personal losses not covered by workers compensation. The pre-1993 version of K.S.A. 44-504(b), cited earlier, was in effect at the time. The Supreme Court recognized the right of the employer to apply its lien to the whole of Houston's tort settlement, noting:

"Had the settlement documents clearly stated a certain amount was specifically for these personal noncompensable losses and had such amount been supported in fact (as opposed to an effort to circumvent the operation of the statute), a much stronger argument in support of claimant's position could have been made. Such is not the situation before us." 238 Kan. at 196.

*Houston* does not address the immediate issue of whether the proceeds of a settlement that falls short of providing the claimant full relief are duplicative of workers compensation benefits paid.

## The Kansas Automobile Injury Reparations Act

Since the workers compensation cases cited by the parties do not shed light on the current issue, we must turn to other resources. Our Supreme Court has recognized the plausibility of comparing K.S.A. 44-504(b) to K.S.A. 40-3113a of the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*, in the appropriate circumstances. *Wishon*, 268 Kan. at 105.

## The Statute

KAIRA mandates automobile liability insurance which provides first-party coverage for personal injury protection (PIP) benefits for an insured injured in an automobile accident. K.S.A. 40-3113a preserves for one injured in an automobile collision the right to proceed against the tortfeasor. It also provides:

"(b) In the event of recovery from such tortfeasor by the injured person, such person's dependents or personal representatives by judgment, settlement or otherwise, the insurer or self-insurer shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefor against such recovery and the insurer or self-insurer may intervene in any action to protect and enforce such lien." K.S.A. 40-3113a.

K.S.A. 40-3113a has provisions strikingly similar to those found under our workers compensation law in K.S.A. 44-504. In fact, they are identical in certain respects. Both recognize the subrogation and lien rights of the provider of benefits (in job-related accidents, the employer; in auto accidents, the PIP carrier). Both define those subrogation rights in similar fashion (in job-related accidents, compensation and medical aid provided by the employer; in auto accidents, PIP benefits paid by the PIP carrier). Both secure for the injured party the right to proceed against the tortfeasor. Both allow the lienholder to intervene in the tort action to protect its interest. Both permit the lienholder to commence an action against the tortfeasor if the injured party fails to do so within 18 months. Both apply to recoveries by the injured party or the dependents or per-

sonal representatives of a deceased injured party. Both apply to recoveries that result from a judgment, settlement, or otherwise. Both provide that the excess of the tort settlement over the lienholder's claim constitutes a credit against future benefits otherwise due. Both provide for a reduction in the lienholder's recovery in an action against the tortfeasor to the extent of the comparative fault of the injured party. Both provide for the lienholder to pay a portion of the attorney fees incurred in the tort recovery.

These similarities are no accident. The KAIRA and the Workers Compensation Act are based upon a common public policy consideration: Prompt and efficient payment for certain losses sustained by one injured on the job or in an automobile accident. K.S.A. 40-3102; *Russell v. Mackey*, 225 Kan. 588, 592 P.2d 902 (1979). These similarities compel us to consider the cases under the KAIRA for guidance in resolving the current dispute.

### The Cases

#### Russell

In *Russell*, Russell was injured in an automobile accident and received PIP benefits of $2,552. She then sued the tortfeasor, who had liability insurance in the amount of $15,000. Although she claimed very serious injuries worth a minimum of $30,000, she agreed to settle with the tortfeasor for the $15,000 maximum provided under his policy. The PIP carrier asserted its $2,552 lien against the settlement proceeds. The district court found that while the $15,000 settlement was not full compensation for Russell's loss, she had accepted that sum in full settlement of her claim and the PIP carrier was entitled to full repayment on its lien since the settlement proceeds were duplicative of the PIP benefits paid.

In affirming the district court, the Supreme Court stated:

"We have concluded that K.S.A. 1977 Supp. 40-3113a should be construed to mean that, if the injured insured settles his total claim with the tortfeasor, including those elements of damage represented by the PIP benefits, the recovery is duplicative, since it includes the PIP benefits." *Russell*, 225 Kan. at 594.

*Russell* is directly on point. Russell had a claim whose value far exceeded the limits of the tortfeasor's liability insurance. Virginia

and her children had claims against Kuhlman that far exceed his liability insurance limit. Both Russell and Virginia and her children settled their claims for the tortfeasor's policy limits. There were outstanding liens for benefits paid in both cases. Both claimed that the liens should not be recognized because their tort recoveries did not compensate them for their total loss, so the settlement proceeds did not duplicate the prior benefits paid. In both cases, the issue of the lienholder's rights was based not on the nature of the claims settled in the tort action, but the amount of the settlement.

Virginia and the children argue that the rule in *Russell* applies only to settlements which exceed the amount of the lien. They cite as authority dicta from *American Family Mut. Ins. Co. v. Griffin*, 9 Kan. App. 2d 482, 681 P.2d 683 (1984). Even if this were true, we do not know whether it would apply to Virginia, the beneficiary of the workers compensation benefits paid. The $100,000 settlement with American Family exceeded the total amount of Truck Insurance Exchange's lien at the time. Truck Insurance Exchange's lien matures only when benefits are actually paid. To the extent the settlement proceeds exceed the amount of the lien, they constitute a credit against the obligation of Truck Insurance Exchange for future benefit payments.

There having been no hearing to apportion the settlement proceeds among Virginia and the children, we do not know whether Virginia's portion of the settlement exceeds the amount of Truck Insurance Exchange's lien. Further, *Griffin* dealt with the PIP carrier's duty to pay attorney fees for the recovery of duplicative PIP benefits, not the PIP carrier's right to reimbursement. While the court in *Griffin* recognized the fact that in *Russell* the tort settlement exceeded the amount of the PIP lien, that fact was nowhere expressed in *Russell* as a prerequisite for recognizing the lien of the PIP carrier. Further, the rule Virginia and the children seek to impose applies only when there has been a partial settlement of the injured party's claims against the tortfeasor.

*Kroeker*

In *State Farm Mut. Auto. Ins. Co. v. Kroeker*, 234 Kan. 636, 676 P.2d 66 (1984), the issue was the insurer's right to PIP reimburse-

ment when its insured made a partial settlement of her claims against the tortfeasor's estate but reserved the right to proceed against the estate for the balance of the claim. Our Supreme Court distinguished these facts from those in *Russell*. It held that when there is a partial settlement of a claim *and* the settlement exceeds the PIP benefits paid, the proceeds of the partial settlement are not duplicative of the PIP benefits paid. However,

"[i]f the injured insured settles his total claim with the tortfeasor and releases the tortfeasor from all further liability, the recovery is duplicative as a matter of law, and the PIP carrier has a lien and is entitled to reimbursement for the total amount of PIP benefits paid out of the recovery made by the insured, subject to the two statutory exceptions provided for in sections (d) and (e) of K.S.A. 40-3113a." *Kroeker*, 234 Kan. 636, Syl. ¶ 4.

These cases construing the rights of the holder of a PIP lien are instructive in determining the rights of the holder of a workers compensation lien now before us. *Russell* and *Kroeker* present us with two possible scenarios that may apply to this case: (1) Virginia and the children entered into a full and final settlement of all claims against Kuhlman, or (2) they entered into a partial settlement with American Family on Kuhlman's policy but reserved the right to pursue their claims against Kuhlman for the balance of their loss. Unfortunately, the parties fail to identify, and the record does not disclose, the facts that determine which scenario applies.

Virginia and the children allege in their summary judgment motion that "American Family did not require that the family members specify amounts for distribution of the proceeds amongst the various plaintiffs; such apportionment being for the Court to determine." Other than the amount of the settlement, this is all we know about it. We do not know whether Virginia and the children released Kuhlman from all claims as a part of the settlement. We do not know whether Kuhlman survived the accident. If he survived, have Virginia and the children initiated an action against him for the remainder of their damages? If he did not survive, have Virginia and the children asserted a claim in his estate for their loss, similar to the claimant's actions in *Kroeker*? Though these actions seem unlikely given Kuhlman's age and probable circumstances, we still do not know.

Accordingly, we must reverse the ruling of the district court and remand the case for resolution of the following: If Virginia and the children did not release Kuhlman and have preserved their claims against him, then the rule in *Kroeker* applies. In that case the settlement proceeds are not duplicative of the workers compensation benefits received *if* Virginia's share which relates to damages compensable under our workers compensation law exceeded the amount of Truck Insurance Exchange's lien at the time.

On the other hand, if Virginia and the children settled their entire claims against Kuhlmann and released him, then Truck Insurance Exchange is entitled to reimbursement to the extent of any duplicative benefits.

In either event, the court must hold an evidentiary hearing to apportion the settlement proceeds among Virginia and the children. See *Kansas Farm Bur. Ins. Co. v. Miller*, 236 Kan. 811, 817, 696 P.2d 961 (1985). Then, with respect to Virginia's portion of the tort settlement, the court must determine what portion is attributable to losses compensable under workers compensation and what portion is attributable to noncovered losses, such as the loss of consortium. If there was a partial settlement of the claims against Kuhlman, the court then must determine whether Virginia's share attributable to workers compensation-related losses exceeded the amount of Truck Insurance Exchange's lien at the time. If there was a total settlement of the claims against Kuhlman, Truck Insurance Exchange then would be entitled to reimbursement of the workers compensation benefits paid, less reasonable attorney fees, from Virginia's duplicative share.

Reversed and remanded.