IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,067

MICHAEL MCCULLOUGH and KENNETH RISLEY,
*Appellees*,

v.

DEVIN LEE WILSON,
*Appellant.*

SYLLABUS BY THE COURT

1.

Pursuant to K.S.A. 40-3113a(c), in the event an injured person who has collected personal injury protection (PIP) benefits from his or her own automobile insurance carrier fails to commence a tort action against the tortfeasor within 18 months after the date of the automobile accident resulting in the injury, such failure shall operate as an assignment to the PIP insurer of any cause of action in tort which the injured person may have against such tortfeasor for the purpose and to the extent of recovery of damages which are duplicative of PIP benefits.

2.

Prior caselaw in Kansas has interpreted K.S.A. 40-3113a(c) as manifesting a legislative intent to provide additional security to PIP insurance carriers by enacting a means for facilitating the enforcement of their subrogation rights on the PIP benefits paid to their insureds when their insured has failed to bring an action against the tortfeasor within 18 months of the automobile accident date for the purpose and to the extent of recovery of damages which are duplicative of the paid PIP benefits.

1

3.

The doctrine of stare decisis recognizes that once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.

4.

The doctrine of stare decisis, while not a rigid inevitability, serves as a prudent governor on the pace of legal change. The application of stare decisis ensures stability and continuity in the law and demonstrates a continuing legitimacy of judicial review.

5.

An appellate court may decline to apply the doctrine of stare decisis if it is clearly convinced that the rule of law in issue was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.

6.

Considerations in favor of an appellate court applying the doctrine of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved.

7.

The doctrine of stare decisis is particularly compelling in cases involving the court's longstanding interpretation of a statute when the Legislature has subsequently amended the statute in question but declined to alter the court's prior interpretation of the statute.

8.

The assignment provisions of K.S.A. 40-3113a(c) do not preclude an injured person's otherwise proper claim against the tortfeasor for duplicative PIP damages.

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 20, 2017. Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed September 7, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*J. Franklin Hummer*, of Shawnee Mission, argued the cause and was on the briefs for appellant.

*Stephen W. Nichols,* of The Nichols Law Firm, LLC, of Kansas City, Missouri, argued the cause, and *Thomas R. Rehorn III*, of Tomasic & Rehorn, of Kansas City, was with him on the brief for appellees.

The opinion of the court was delivered by

JOHNSON, J.: A jury found Devin Wilson liable in tort for injuring Kenneth Risley in an automobile accident and awarded Risley, in addition to other compensation, the cost of his medical expenses resulting from the accident (hereafter "medical expenses"). Prior to filing this lawsuit 1 day short of 24 months after the accident, Risley had been paid for his medical expenses under the personal injury protection (PIP) coverage of his own automobile insurance policy. Wilson argued below that Risley had no right to sue for the medical expenses because, pursuant to K.S.A. 40-3113a(c), the cause of action for those medical expenses had been statutorily assigned to Risley's PIP insurance carrier 18 months after the accident. The Court of Appeals affirmed the district court's determination that the assignment provision in K.S.A. 40-3113a(c) did not divest Risley of the right to recover his medical expenses from the tortfeasor. We granted Wilson's petition to review the Court of Appeals' decision. We affirm.

3

FACTUAL AND PROCEDURAL OVERVIEW

This case emanates from an automobile accident in which Wilson drove his vehicle at an excessive speed and crashed it into the rear of a vehicle containing a driver, Michael McCullough, and a passenger, Risley. McCullough and Risley filed a lawsuit against Wilson one day before the applicable two-year statute of limitations would expire, seeking monetary damages for lost wages, pain and suffering, and medical expenses.

Both McCullough and Risley possessed automobile insurance—McCullough with Farmers Insurance Company, Inc. (Farmers) and Risley with Automobile Club Insurance Exchange (AAA)—that paid PIP benefits to cover their respective medical expenses. Farmers sought and received reimbursement from Wilson's insurance carrier—Key Insurance Company (Key)—for the PIP benefits that Farmers had paid to McCullough. Inexplicably, AAA never requested reimbursement from Key for the $3,081 in PIP benefits it had paid to Risley.

Shortly before trial, Wilson filed a partial motion for summary judgment in which he argued for the first time that neither plaintiff could recover damages for their medical expenses. With respect to McCullough, Wilson asserted that he had paid the medical expenses, i.e., Farmers paid McCullough and Key reimbursed Farmers on Wilson's behalf. McCullough conceded the point that the tortfeasor, through the tortfeasor's insurer, had paid for McCullough's medical expenses.

With respect to Risley, Wilson argued that, 18 months after the accident, K.S.A. 40-3113a(c) had effected a statutory assignment of Risley's cause of action to recover his medical expenses to his PIP insurer, AAA. Under Wilson's theory, when Risley filed his lawsuit, only AAA had a viable claim to recover damages for Risley's medical expenses.

4

Risley opposed the motion, maintaining that K.S.A. 40-3113a(c) does not operate as a true assignment of a victim's cause of action against the tortfeasor, and, therefore, he can recover the cost of his medical bills by suing the tortfeasor anytime within the two-year statute of limitations.

The district court opined that, regardless of whether Risley could actually be paid the amount of his medical expenses in this lawsuit, the plaintiffs were allowed to present the jury with evidence of those expenses to prove the extent of their personal injuries. Therefore, the district court took the assignment question under advisement and allowed the trial to proceed as scheduled.

The jury returned a verdict in the plaintiffs' favor. McCullough was awarded $8,732.71 in damages including $3,416.95 in past medical expenses; Risley was awarded $8,831 with $3,081 covering his medical expenses. Whereupon, Wilson renewed his challenge to the plaintiffs' medical expenses claims. Again, McCullough conceded that he had no further claim against Wilson for his medical expenses. Risley again contested Wilson's partial summary judgment motion, and the district court denied the motion as it related to Risley. The court ordered Wilson to pay Risley the entire jury award, explaining:

> "[T]he Court is going to find that [Wilson] is not entitled to the windfall as a result of [Risley's] insurance company not subrogating on the issue, and the Court is going to give that benefit to [Risley] based on the limitation of receiving duplication if there is a subrogation by the PIP carrier. . . .
>
>     . . . .
>
> ". . . The purpose of [K.S.A. 40-3113a(c)] was to avoid a windfall by the plaintiff, but it says nothing about a windfall by the insurance company that verdict is entered against. And so the Court doesn't believe that the purpose was to give a windfall to the

5

defendant insurance company when it's not the original PIP carrier—or paid the PIP in the first place."

The Court of Appeals affirmed the district court's ruling. *McCullough v. Wilson*, No. 115,067, 2017 WL 262026, at \*10 (Kan. App. 2017) (unpublished opinion). The panel began its analysis by focusing on the Kansas Legislature's purpose in passing the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 et seq., which was to curtail personal injury litigation arising from automobile accidents by providing prompt compensation to injured persons. 2017 WL 262026, at \*3. The KAIRA furthered this goal by requiring every vehicle owner to purchase insurance providing the owner with PIP benefits that pay, *inter alia*, medical expenses incurred in an automobile accident regardless of who was at fault. 2017 WL 262026, at \*3. Because injured persons could potentially recover damages from liable tortfeasors that duplicate the "no-fault" PIP benefits paid by their own insurance company, the KAIRA gave PIP insurers subrogation rights, allowing the PIP insurer to be reimbursed from their insured's recovery from the tortfeasor, thereby avoiding double recovery by the plaintiff. To protect those subrogation rights in the event the PIP insured does not sue the tortfeasor, the insurer may bring its own claim against the tortfeasor 18 months after the accident, per K.S.A. 40-3113a(c). 2017 WL 262026, at \*4. The panel concluded that K.S.A. 40-3113a(c) does not prevent an injured plaintiff from bringing his or her own claim, but instead "merely facilitates enforcement of the PIP carrier's subrogation rights." 2017 WL 262026, at \*4, 9-10. As such, the Court of Appeals held Risley was entitled to collect all of his damages from the tortfeasor and his PIP insurer's subrogation rights from that judgment was a matter between the parties to the PIP insurance contract, i.e., Risley and AAA. 2017 WL 262026, at \*10.

This court granted Wilson's petition for review.

Wilson's petition for review purports to raise seven issues with the Court of Appeals' decision, but we discern that they all are subparts of Wilson's core issue: whether the panel's interpretation of K.S.A. 40-3113a(c) (hereafter "subsection [c]") is erroneously at odds with the statute's plain language. Wilson claims that subsection (c)'s plain language unambiguously assigned Risley's cause of action for damages that were duplicative of his PIP benefits to his PIP insurer, AAA, as of the date that was 18 months after the accident resulting in the injuries. He contends that when Risley filed this lawsuit, he no longer possessed a cause of action in tort against Wilson for his medical expenses; that cause of action had been assigned, as a matter of law, to AAA. Therefore, Wilson asserts that any action to recover Risley's medical expenses from the tortfeasor, after that 18-month date, had to be brought by AAA, the PIP insurer.

*Standard of Review*

This case involves our interpretation of the KAIRA. Interpretation of a statute is a question of law over which this court exercises unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

*Analysis*

Although the parties focus on subsection (c), for context we begin by setting forth all of the provisions of K.S.A. 40-3113a:

> "(a) When the injury for which personal injury protection benefits are payable
> under this act is caused under circumstances creating a legal liability against a tortfeasor
> pursuant to K.S.A. 40-3117 or the law of the appropriate jurisdiction, the injured person,

7

such person's dependents or personal representatives shall have the right to pursue such person's remedy by proper action in a court of competent jurisdiction against such tortfeasor.

"(b) In the event of recovery from such tortfeasor by the injured person, such person's dependents or personal representatives by judgment, settlement or otherwise, the insurer or self-insurer shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefor against such recovery and the insurer or self-insurer may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise shall be recovered by the injured person, such person's dependents or personal representatives prior to the completion of personal injury protection benefits, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of personal injury protection benefits paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of such personal injury protection benefits.

"(c) In the event an injured person, such person's dependents or personal representative fails to commence an action against such tortfeasor within 18 months after the date of the accident resulting in the injury, *such failure shall operate as an assignment to the insurer or self-insurer of any cause of action in tort which the injured person, the dependents of such person or personal representatives of such person may have against such tortfeasor for the purpose and to the extent of recovery of damages which are duplicative of personal injury protection benefits.* Such insurer or self-insurer may enforce same in such person's own name or in the name of the injured person, representative or dependents of the injured person for their benefit as their interest may appear by proper action in any court of competent jurisdiction.

"(d) In the event of a recovery pursuant to K.S.A. 60-258a, and amendments thereto, the insurer or self-insurer's right of subrogation shall be reduced by the percentage of negligence attributable to the injured person.

8

"(e) Pursuant to this section, the court shall fix attorney fees which shall be paid proportionately by the insurer or self-insurer and the injured person, such person's dependents or personal representatives in the amounts determined by the court." (Emphasis added.) K.S.A. 40-3113a(a)-(e).

Wilson asserts that subsection (c) is plain and unambiguous:

"In the event an injured person . . . fails to commence an action against such tortfeasor within 18 months after the date of the accident resulting in the injury, such failure shall operate as an assignment to the insurer . . . of any cause of action in tort which the injured person . . . may have against such tortfeasor for the purpose and to the extent of recovery of damages which are duplicative of [PIP] benefits."

Wilson argues that an assignment of a right plainly means that the assignor has transferred the right to an assignee who thereafter holds sole ownership; the assignor and assignee do not jointly possess control over the right that has been assigned. Accordingly, he contends that 18 months after an accident, the PIP insurer, as assignee, becomes the real party in interest for any claim against the tortfeasor for duplicative medical expenses. Wilson reminds us that our rules of statutory construction direct us to give effect to the Legislature's express language and to avoid imposing our own determination about what the law should or should not be. *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

In K.S.A. 40-3103, the Legislature sets forth definitions that apply to the KAIRA, but "assignment" is not included. "When a statute does not define a term, the 'words in a statute are assumed to bear their "ordinary, contemporary, common meaning."'" *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). "Dictionary definitions are good sources for the 'ordinary, contemporary, common' meanings of words." 306 Kan. at 851. A popular legal dictionary defines

"assignment" as "[t]he transfer of rights or property." Black's Law Dictionary 142 (10th ed. 2014). Similarly, one of the definitions in Webster's II New College Dictionary 68 (1999) is "[t]he transfer of a claim, right, interest, or property." In turn, "transfer" is defined as: "To convey or remove from one place or one person to another; to pass or hand over from one to another, [especially] to change over the possession or control of." Black's Law Dictionary 1727 (10th ed. 2014).

The foregoing definitions give Wilson's plain language argument some facial appeal. Commonly, one would not expect to retain joint control over a right that he or she had transferred to another. But the transfer in this case is an involuntary assignment by operation of law, the effect of which has been delineated for us by caselaw. In other words, we are not writing on a clean slate. The doctrine of stare decisis recognizes that "'once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.'" *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004).

The Court of Appeals recited Risley's position to be that

"the KAIRA seeks to prevent a double recovery by the accident victim to protect the PIP carrier, rather than the tortfeasor, and, in a manner similar to the collateral source rule, the KAIRA does not grant the tortfeasor the 'right to enforce th[e] subrogation right of the PIP carrier, or to benefit from the PIP carrier's waiver of any such right.'" 2017 WL 262026, at *5.

The panel then found that *Foveaux v. Smith*, 17 Kan. App. 2d 685, 843 P.2d 283 (1992), supported an interpretation of subsection (c)'s assignment scheme that did not create a new statute of limitation for claims involving damages duplicative of PIP benefits. Instead, subsection (c) should be construed as manifesting a legislative intent to provide "additional security to PIP carriers by enacting a means for facilitating the enforcement of

10

their subrogation rights when the insured has failed to act within 18 months of the accident date." 2017 WL 262026, at *6.

The panel pointed out that *Foveaux* was influenced by a similar assignment provision in our Kansas Workers Compensation Act, K.S.A. 44-501 et seq. Workers who had suffered on-the-job injuries negligently caused by someone other than the worker's employer or coworkers could sue the tortfeasor, even though the worker had collected workers compensation benefits. But an "action against the other party, if prosecuted by the worker, must be instituted within one year from the date of the injury and, if prosecuted by the dependents or personal representatives of a deceased worker, must be instituted within 18 months from the date of such injury." K.S.A. 44-504(b). Germane to our discussion is the assignment provision, to-wit:

"Failure on the part of the injured worker, or the dependents or personal representatives of a deceased worker to bring such action within the time specified by this section, *shall operate as an assignment to the employer of any cause of action in tort* which the worker or the dependents or personal representatives of a deceased worker may have against any other party for such injury or death, and such employer may enforce the cause of action in the employer's name or in the name of the worker, dependents or personal representatives for their benefit as their interest may appear by proper action in any court of competent jurisdiction." (Emphasis added.) K.S.A. 44-504(c).

The panel in *Jerby v. Truck Insurance Exchange*, 36 Kan. App. 2d 199, 205-06, 138 P.3d 359 (2006), opined:

"K.S.A. 40-3113a has provisions strikingly similar to those found under our workers compensation law in K.S.A. 44-504. . . .

11

"These similarities are no accident. The KAIRA and the Workers Compensation Act are based upon a common public policy consideration: Prompt and efficient payment for certain losses sustained by one injured on the job or in an automobile accident. [Citations omitted.] These similarities compel us to consider the cases under the KAIRA for guidance in resolving the current dispute."

Looking to the workers compensation cases for guidance reveals that we have consistently rejected the argument that K.S.A. 44-504(c) divests an injured worker, or the injured worker's dependents, of the right to bring a claim against a third-party tortfeasor once the subrogation-assignment provision takes effect. See *Houk v. Arrow Drilling Co.*, 201 Kan. 81, 86-87, 439 P.2d 146 (1968); *Klein v. Wells*, 194 Kan. 528, 537-38, 400 P.2d 1002 (1965); *Bingham v. Hillcrest Bowl, Inc.*, 193 Kan. 201, 201-02, 392 P.2d 942 (1964); *Jordan v. Lacey*, 189 Kan. 169, 171, 368 P.2d 34 (1962); *Lady v. Ketchum*, 186 Kan. 614, 620-21, 352 P.2d 21 (1960).

Moreover, the panel below observed that "*Foveaux's* interpretation of K.S.A. 40-3113a(c) is consonant with our Supreme Court's decision in *Potts v. Goss*, 233 Kan. 116, 660 P.2d 555 (1983)." 2017 WL 262026, at *7. In *Potts*, 17-year-old Christopher Goss was driving his mother's vehicle when he allegedly injured Cathleen M. Fotovich Potts in an accident. Potts filed suit against the mother, Imogene Goss, and Christopher within 18 months of the accident. Service of process was obtained on Imogene but not Christopher who had since left the state. The parties settled the claim before going to trial. Then, just before the two-year statute of limitation expired, Potts' PIP carrier, Farm Bureau Mutual Insurance Co., Inc. (Farm Bureau), filed suit against Christopher. The district court dismissed Farm Bureau's suit on the basis that Potts had settled the claim and released Christopher and Imogene from liability.

Farm Bureau appealed the dismissal arguing that, since Potts never obtained service of process on Christopher as required by K.S.A. 2017 Supp. 60-203, Potts did not "commence an action" against Christopher within 18 months of the accident and,

12

therefore, the cause of action against Christopher was automatically assigned to Farm Bureau. This court swiftly rejected that argument as "implausible," "patently absurd and deserv[ing of] no further attention." *Potts*, 233 Kan. at 119, 120.

Wilson does not challenge that those prior cases undermine his position. Rather, in addition to asserting that those cases were wrongly decided, he argues that the Court of Appeals erred in relying on prior cases for statutory interpretation without first finding that the plain language of the statute was ambiguous. He points to this court's opinion in *Hoesli* which overruled the interpretation of a workers compensation statute by *Dickens v. Pizza Co.*, 266 Kan. 1066, 974 P.2d 601 (1999). *Hoesli* explained "[t]he problem with *Dickens* is that it ignored the legislature's intent as expressed in the statute's plain language in favor of the court's contrary perception of legislative purpose. In other words, it engaged maxims of statutory construction without discerning any uncertainty in the text." 303 Kan. at 364. Consequently, Wilson argues, the panel in this case failed to identify any uncertainty in the text of subsection (c) and improperly bypassed this critical step to look, instead, at sources outside the text of the statute.

That argument is flawed for more than one reason. First, the Court of Appeals was not imbued with the authority to simply ignore the Supreme Court's decision in *Potts*. See *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128 (2015) (Court of Appeals duty bound to follow Kansas Supreme Court precedent). If the decisions in *Potts* and the workers compensation cases were actually contrary to the legislative intent manifested in plain statutory language, the remedy is to seek to have the Supreme Court overturn its precedent, as it did in *Hoesli*. The plain and unambiguous language rule upon which Wilson relies is not a self-actuating rule of law that trumps prior precedent from this court interpreting a statute.

Next, statutory provisions may be ambiguous despite the absence of any of the uncertainty in the text which Wilson argues is required in order to apply precedent.

13

"[E]ven crystal clear language cannot always save a statutory provision from the specter of ambiguity. See *State v. Horn,* 288 Kan. 690, 692, 206 P.3d 526 (2009) (conundrum arising not from lack of clarity in statutory language, but from existence of two apparently controlling but conflicting statutes). Even the Court of Appeals majority, citing to *State v. Valladarez,* 288 Kan. 671, 678-79, 206 P.3d 879 (2009), acknowledged that ambiguity can arise because 'various statutes are in conflict,' and that in such an event 'the canons of statutory construction must be applied and legislative history may be consulted for indications of legislative intent.' *Coman,* 42 Kan. App. 2d at 595." *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012).

As suggested by precedent, a complete assignment under subsection (c) that precluded Risley from suing for his medical expenses after 18 months would conflict with the tort statute of limitations that gave him two years to file suit.

Further, we have held that the absence of language in a statute can create an ambiguity. Cf. *State v. Quested*, 302 Kan. 262, 268, 352 P.3d 553 (2015) ("legislative silence creates an ambiguity"). Here, subsection (c) is silent as to whether someone other than the assignee—such as the tortfeasor—can enforce the assignment, whether the assignee can refuse to accept the statutory assignment, whether the assignee PIP insurer can reassign the cause of action back to its insured, or what happens if the assignment conflicts with the terms of the automobile insurance policy or with another statute.

But regardless of whether one discerns any ambiguity in the statutory language, the doctrine of stare decisis is a compelling reason to affirm the lower courts' decisions based upon our precedent. Stare decisis—while not a "rigid inevitability"—serves as a "prudent governor on the pace of legal change." *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016). "'The application of stare decisis ensures stability and continuity— demonstrating a continuing legitimacy of judicial review.'" *Crist*, 277 Kan. at 715; see also *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018) (stare decisis effects even-

14

handed, predictable, and consistent application of the law) (citing *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 2562-63, 192 L. Ed. 2d 569 [2015]).

Granted, as Wilson points out, this court will overturn precedent, no matter how longstanding, if it is "'clearly convinced [the rule of law] was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Simmons v. Porter*, 298 Kan. 299, 304, 312 P.3d 345 (2013). But Wilson does not provide a compelling argument as to the nature of the good that would be created by overturning an interpretation of subsection (c) that has been relied upon by insurers and insureds for decades. In that vein, we observed in another insurance-related case that "'[c]onsiderations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved.'" *Crist*, 277 Kan. at 715 (quoting *Payne v. Tennessee*, 501 U.S. 808, 828, 111 S. Ct. 2597, 115 L. Ed. 2d 720 [1991]).

Ironically, if we were to decide at this late date that the Legislature's intent, as expressed in its plain language, was that the assignment provisions of subsection (c) could preclude an injured person's otherwise proper claim against the tortfeasor for duplicative PIP damages, it might very well be *contrary* to the legislative intent manifested in decades of acquiescence in our caselaw interpretation of the statutory provision. In the decades since our decisions in *Potts* and *Lady*, the Kansas Legislature has amended both K.S.A. 40-3113a and K.S.A. 44-504 but declined to gainsay this court's interpretation in those cases. This court has found the doctrine of stare decisis to be "particularly compelling in cases where . . . the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so." *Quested*, 302 Kan. at 278.

In sum, we affirm the Court of Appeals' decision affirming the district court. Risley is entitled to the entirety of his damages as awarded by the jury, including any medical expenses that are duplicative of the PIP benefits Risley received from AAA.

As a final matter, before the Court of Appeals, Risley filed a motion for attorney fees on the ground that Wilson's appeal is frivolous. See Supreme Court Rule 7.07(b), (c) (2018 Kan. S. Ct. R. 50). We do not disturb the Court of Appeals' order denying Risley's motion. See *Blank v. Chawla*, 234 Kan. 975, 982, 678 P.2d 162 (1984) (A frivolous appeal is defined as "'[o]ne in which no justiciable question has been presented and appeal is readily recognized as devoid of merit in that there is little prospect that it can ever succeed.' Black's Law Dictionary 601 [5th ed. 1979].").

Affirmed.